STATE OF CONNECTICUT *v.* CLARENCE CAREY, JR.
(5797)

BORDEN, STOUGHTON and FOTI, Js.

Argued November 3—decision released December 22, 1987

*Robert W. Clark,* with whom, on the brief, were *Thomas J. Keramidas* and *Jane Cable,* for the appellant (defendant).

*Geoffrey Marion,* deputy assistant state's attorney, with whom was *James G. Clark,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction for possession of narcotics in violation of General Statutes § 21a-279 (a), following a conditional plea of nolo contendere. His plea of nolo contendere was conditioned upon his right to appeal the trial court's denial of his motion to suppress certain evidence found in his possession pursuant to a search incident to an arrest without a warrant. The dispositive issue is whether there was probable cause to arrest the defendant prior to the challenged search. We find no error.

The following evidence was adduced at the hearing on the defendant's motion to suppress. Officers William Discordia and Clemente Delacruz, and Trooper Sidney Luther, all then assigned to the statewide narcotics task force, were conducting surveillance of suspected narcotic activity at an apartment building located on Federal Street in New London. The building had been the scene of prior drug activities and trafficking, and arrests had been made for narcotics offenses. On this occasion, Discordia was positioned on the stairway between the second and third floors, while Delacruz and Luther were positioned on the third floor.

The defendant and Eric Malloy entered the building. Luther testified that he heard one say to the other, "What do you want, coke or dope?" to which the other responded, "Coke." On the basis of this conversation, Luther believed that a sale was about to take place. Neither of the other officers heard this conversation. One of the individuals then entered an apartment, while the other waited in the hallway. The testimony of Luther suggested that it may have been Malloy who went into the apartment.

Soon thereafter, Discordia observed the defendant and Malloy in the second floor stairwell. Malloy was holding a clear plastic vial of what appeared to be "crack," a cocaine derivative. Discordia testified that he believed, at that point, either that the defendant had given the vial to Malloy or that Malloy was showing the vial to the defendant. Each of the officers, including Discordia, testified that he did not witness any other events which normally accompany a drug transaction, namely, an exchange of money, or an exchange of possession of drugs. Delacruz testified that he believed the defendant was only being shown the vial and "that a sale was about to take place." Luther also testified that he "didn't know if the drug transaction had actually occurred," and that he believed that the defendant was "in the position of the receiver."

At that point, the officers came out of hiding. Discordia grabbed the vial from Malloy, placed him under arrest, and searched him. Delacruz and Luther informed the defendant that he was not free to leave. The court determined, and neither party disputes, that this constituted an arrest of the defendant. Delacruz and Luther ordered the defendant to empty his pockets. The defendant removed from his pocket, among other things, a matchbook with a glassine bag sticking out of it. The glassine bag appeared to contain heroin, and was seized by Delacruz and Luther. The defendant was then placed under arrest for possession of the heroin.

At the conclusion of the hearing on the defendant's motion to suppress the heroin seized from him, the court determined that there was probable cause to arrest the defendant prior to searching him and denied the defendant's motion. On appeal, the defendant argues that, at the time of their search of him, the police lacked the necessary probable cause to arrest him, as there existed no facts known to the officers to conclude that he was engaged in any wrongdoing. Accordingly, he contends

that the search incident to that arrest violated his right to be free of unreasonable searches and seizures under the federal[1] and state[2] constitutions. We disagree.

"We note at the outset that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well delineated exceptions. . . . It is the state's burden at trial to establish the exception. . . . If evidence obtained without a warrant was obtained as a result of a valid search and seizure incident to a lawful arrest, such evidence was not illegally obtained and is admissible." (Citations omitted.) *State* v. *Lizotte,* 11 Conn. App. 11, 17, 525 A.2d 971, cert. denied, 204 Conn. 806, 528 A.2d 1154 (1987). The issue before us, then, is whether the search of the defendant was incident to a lawful warrantless arrest.

A police officer is authorized to arrest, without a warrant, "any person who the officer has reasonable grounds to believe has committed or is committing a felony." General Statutes § 54-1f (b); *State* v. *Dennis,* 189 Conn. 429, 431, 456 A.2d 333 (1983). "[T]he term 'reasonable grounds' as used in the statute is to be equated with probable cause." *State* v. *Dennis,* supra.

[1] The fourth amendment to the United States constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." This constitutional right is made applicable to the states through the fourteenth amendment to the United States constitution. *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[2] Article first, § 7 of the Connecticut constitution provides in pertinent part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ." Although the defendant relies on both the federal and the state constitutions, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state constitutional claims. We decline to undertake such analysis. See *State* v. *Camerone,* 8 Conn. App. 317, 321 n.1, 513 A.2d 718 (1986).

"In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed." (Citations omitted.) *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). "Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. *Texas* v. *Brown,* 460 U.S. 730, [742,] 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983)." *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 175, 474 A.2d 795 (1984); see also *Babiarz* v. *Hartford Special, Inc.,* 2 Conn. App. 388, 393, 480 A.2d 561 (1984).

"In its oral memorandum of decision the court made only limited factual findings and legal conclusions. We, therefore, must look to all the evidence produced in support of its decision." *State* v. *Mitchell,* 7 Conn. App. 46, 49, 507 A.2d 1017 (1986), aff'd in part and rev'd in part on other grounds, 204 Conn. 187, 527 A.2d 1168, cert. denied, U.S. , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). " 'Furthermore, when we test the quantum of evidence supporting probable cause, it is not the personal knowledge of the arresting officer but the collective knowledge of the law enforcement organization at the time of the arrest which must be considered.' " *State* v. *Dennis,* supra, 432, quoting *State* v. *Acquin,*

187 Conn. 647, 656–57, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983).

When the defendant was arrested and ordered to empty his pockets, the police were aware that he was present in a building known as a site of frequent drug transactions, and that, immediately prior to Malloy holding a vial of crack in the defendant's presence, the defendant and Malloy had discussed a cocaine transaction. The defendant argues that this information, at most permitted the police to conclude that a drug transaction was *about* to take place, and that they therefore lacked probable cause to believe that he had committed any crime. This information, along with Discordia's belief that Malloy may have received the vial from the defendant, however, was sufficient evidence to establish probable cause that the defendant had just engaged in a sale of a narcotic substance in violation of General Statutes § 21a-278.

Even if we assume, arguendo, that the police could only have reasonably concluded that a drug transaction was *about* to take place, the defendant's argument that the officers had no basis to arrest him is without merit. That a drug transaction was about to take place does not mean that a crime had not already been witnessed by the officers. At the time that the vial of crack was seized from Malloy, the police had before them facts which, taken together, were sufficient to justify a determination of probable cause that the defendant had committed the crime of attempted possession of narcotics in violation of General Statutes §§ 53a-49 and 21a-279.

"Essentially an attempt under § 53a-49 (a) is an act or omission done with the intent to commit some other crime. The rationale is that while a defendant may have failed in his purpose, his conduct is, however, crimi-

nally culpable, and if carried far enough along causes a sufficient risk of harm to be treated as a crime in and of itself. . . . The act or acts must be something more than mere preparation for committing the intended crime; they must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted." (Citations omitted.) *State* v. *Green,* 194 Conn. 258, 271–72, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985).

The conversation heard by Luther showed that the defendant and Malloy intended to engage in a drug transaction. The defendant's request, as a potential buyer, that Malloy procure "coke" for him and his meeting with Malloy soon thereafter in the stairwell where Malloy procured a vial of crack and showed it to the defendant, "constitut[ed] a substantial step in a course of conduct planned to culminate in his commission of the crime" of possession of narcotics, and was "strongly corrobative of the [defendant's] criminal purpose" to do so. General Statutes § 53a-49. The police therefore had probable cause to believe that the defendant had already completed the crime of attempted possession of narcotics when they intervened. See *People* v. *Maciel,* 39 Colo. App. 149, 568 P.2d 68 (1977); *People* v. *Duprey,* 98 App. Div. 2d 110, 469 N.Y.S.2d 702 (1983). This justified their arrest of him and the subsequent search incident to that lawful arrest.

There is no error.

In this opinion the other judges concurred.