## State of Connecticut *v.* Christopher Foster
### (5608)

Borden, Stoughton and Foti, Js.

Argued November 3, 1987—decision released January 12, 1988

*Michael A. Georgetti,* for the appellant (defendant).

*Joseph C. Morelli,* special assistant state's attorney, for the appellee (state).

Foti, J. The defendant appeals from the judgments of conviction rendered after he entered a conditional plea of nolo contendere to two counts of larceny in the sixth degree in violation of General Statutes § 53a-125b, two counts of burglary in the third degree in violation of General Statutes § 53a-103, and one count of criminal mischief in the third degree in violation of General Statutes § 53a-117, following the denial of the defendant's motion to suppress. The defendant claims on appeal that the court erred (1) in finding that the police had sufficient articulable grounds to stop him, (2) in finding that the duration of the stop did not exceed constitutional limits, and (3) in refusing to suppress evidence obtained incidental to his arrest. We find no error.

The essential facts are not in dispute. On the morning of June 19, 1986, Officers William Gervais and Sabastian Basile of the Hartford police department were dispatched, at approximately 4:40 a.m., to 90 Henry Street where they received a complaint that a pickup truck had been burglarized. The complainant described the suspects as two black males who jumped from the vehicle and ran south toward Roxbury Street, which intersects with Henry Street. On their arrival, the police observed that the pickup truck had a broken window, evidence which supported the complainant's statement that the vehicle had been burglarized. The police further determined that another vehicle in the area had also been broken into. They began an immediate search of that area. Gervais stopped a vehicle occupied by two black men. While obtaining the defendant's driver's license and vehicle registration, Gervais recognized him as the same individual he had arrested in early 1986 in connection with the burglary and larceny of another motor vehicle in the area.

At the time of the initial stop, the police observed a box of cassette tapes on the front seat of the vehicle which they suspected were taken from the pickup truck. The defendant was detained for approximately one hour while the police located the pickup truck's owner, and brought him to where the defendant was being detained. The owner immediately identified the box of cassette tapes as his, at which point the defendant and his passenger were arrested and the defendant's vehicle was searched. The owner of the second vehicle later identified certain items which had been taken from his vehicle. The court denied the defendant's motion to suppress from evidence the items seized from his vehicle at the time of his arrest.

I

The defendant claims that the police lacked sufficient articulable grounds for stopping him in the first instance. "[T]he precise issue before this court is not whether the police had probable cause to arrest the defendant but rather whether the investigative stop was justified by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' *Terry* v. *Ohio,* [392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)]." *State* v. *Aillon,* 202 Conn. 385, 399, 521 A.2d 555 (1987). "In reviewing the police officers' actions in this case, we must determine, first, whether the stop was justified at its inception, and second, whether the ensuing police response was 'reasonably related in scope to the circumstances which justified the interference in the first place.' *Terry* v. *Ohio,* supra, 19–20; *United States* v. *Sharpe,* 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) . . . ." *State* v. *Aillon,* supra, 399.

The court articulated several factors which gave the police reasonable suspicion for stopping the defendant.

These included (1) the temporal proximity of the stop to the reported crime, (2) the geographical proximity of the scene of the crime to the location where the defendant was stopped, (3) the fact that the defendant's vehicle was the only one moving in the immediate vicinity of the crime at 4:50 a.m., and (4) the neighborhood in which the two black men were stopped was a predominantly white neighborhood.

The defendant contends that the reasons for stopping him articulated by the police and accepted by the court do not meet the test for reasonable suspicion enunciated in *Terry* v. *Ohio,* supra, and its progeny in our state. We disagree.

" 'Proximity in time and place of the stop to the crime is highly significant' in the determination whether the police action was reasonable." *State* v. *Aversa,* 197 Conn. 685, 691, 501 A.2d 370 (1985); *State* v. *Carter,* 189 Conn. 611, 616–17, 458 A.2d 369 (1983). If the number of people in the area of a felony is sufficiently small, then under appropriate circumstances an investigative stop may be made without any description of the perpetrator whatsoever. See 3 W. LaFave, Search and Seizure (2d Ed.) § 9.3 (d), pp. 469–71.

Here, there were myriad facts supporting the reasonable suspicion of the police: the perpetrators were described as two black males; the defendant's car was the only vehicle moving in the immediate area of the felony at approximately 4:50 a.m., shortly after the break-in was reported; and the defendant was stopped within blocks of the break-in, minutes after it had occurred. These facts present clearly articulable grounds for an investigative stop.

II

The defendant's second claim is that his detention for approximately one hour, while the Hartford police

determined the identity of the pickup truck's owner and brought him to the scene of the stop, exceeded the parameters of an investigative stop under *United States* v. *Sharpe,* 470 U.S. 675, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985), and *Terry* v. *Ohio,* supra.

The limits of an investigative stop to investigate past criminal conduct cannot be precisely defined. "The proper way to identify the limits is to apply the same test already used to identify the proper bounds of intrusions that further investigations of imminent or ongoing crimes. That test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *United States* v. *Hensley,* 469 U.S. 221, 228, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); *State* v. *Mitchell,* 7 Conn. App. 46, 60, 507 A.2d 1017 (1986), aff'd in part and rev'd in part on other grounds, 204 Conn. 187, 527 A.2d 1168, cert. denied, U.S. , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Determination of the means and duration that are reasonably necessary for an investigative stop depends on a fact-bound examination of the particular circumstances. See *State* v. *Braxton,* 196 Conn. 685, 689, 495 A.2d 273 (1985). The principal factor in this determination is whether the police acted diligently under the circumstances to dispel or confirm their suspicions. *United States* v. *Sharpe,* supra, 686–87.

The one hour stop of the defendant was reasonable under the circumstances in this case. The police first determined the identity of the owner of the pickup truck. They were then required to find the owner at approximately 4:50 a.m., a time of day when few people were available to provide information regarding the owner's whereabouts. Finally, the police transported the owner of the pickup truck to the scene of the stop.

Any delay which resulted cannot be attributed to a lack of diligence on the part of the police. See *State* v. *Mitchell,* supra, 49. Thus, the detention of the defendant was reasonably calculated to maintain the status quo. See *United States* v. *Richards,* 500 F.2d 1025 (9th Cir. 1974), cert. denied, 420 U.S. 924, 95 S. Ct. 1118, 43 L. Ed. 2d 393 (1975) (one hour detention held reasonable).

### III

The defendant's final claim is that the trial court erred in refusing to suppress evidence obtained at the time of his arrest because the search failed to meet any of the recognized exceptions to the warrant requirement. We disagree.

"We note at the outset that a search conducted without a warrant issued upon probable clause is per se unreasonable, subject only to a few specifically established and well delineated exceptions." *State* v. *Lizotte,* 11 Conn. App. 11, 17, 525 A.2d 971, cert. denied, 204 Conn. 806, 528 A.2d 1154 (1987). "If evidence obtained without a warrant was obtained as a result of a valid search and seizure incident to a lawful arrest, such evidence was not illegally obtained and is admissible." Id. "A police officer is authorized to arrest, without a warrant, 'any person who the officer has reasonable grounds to believe has committed or is committing a felony.' General Statutes § 54-1f (b); *State* v. *Dennis,* 189 Conn. 429, 431, 456 A.2d 333 (1983)." *State* v. *Carey,* 13 Conn. App. 69, 72, 534 A.2d 1234 (1987).

Once the defendant's vehicle was stopped, the suspicions of the police were heightened because Gervais recognized the defendant as the individual he had arrested earlier in the year for burglarizing a vehicle in the same area. In addition, the police were able to see, in plain view, a box of cassette tapes in the defend-

ant's automobile.[1] After the owner of the pickup truck had been located and transported to the scene of the stop, he immediately identifed the cassette tapes as his. These facts exceeded the minimal requirements of probable cause necessary for a lawful arrest. See *State* v. *Carey,* supra. The seizure of the cassette tapes and other evidence was incidental to that lawful arrest. *State* v. *Lizotte,* supra. Thus, we can find no error in the trial court's refusal to suppress the evidence obtained as a result of the search.

There is no error.

In this opinion the other judges concurred.

---

[1] The defendant has not raised any issue regarding the observation of the seized evidence under the plain view doctrine. Nevertheless, we note that the police observed the seized evidence inadvertently while examining the defendant's driver's license as a result of a legal stop, thus meeting the test of the plain view doctrine. See *State* v. *Altrui,* 188 Conn. 161, 179, 448 A.2d 837 (1982).