### STATE OF CONNECTICUT *v.* MITCHELL BOWDEN
### (5858)

SPALLONE, BIELUCH and O'CONNELL, Js.

Argued March 17—decision released August 16, 1988

*Carole C. Cooke,* special public defender, with whom, on the brief, were *William M. Bloss,* special public defender, and *Glenn Kaas,* law student intern, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *Mary Galvin,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48, and possession of a sawed-off shotgun in violation of General Statutes § 53a-211. The defendant claims that the trial court erred (1) in denying his motion to suppress evidence and state-

ments made to the police, (2) in limiting his cross-examination of a witness, and (3) in instructing the jury with regard to accomplice credibility. We find no error.

The jury could reasonably have found the following facts. On September 17, 1985, at approximately 9:05 a.m., a robbery occcurred at a bank located on Girard Street in New Haven. Witnesses to the robbery described the perpetrators as three black males whose identities were concealed by stocking masks. Two of the perpetrators were further described as being approximately five feet ten inches tall, and a third was said to have been taller. In addition, one robber was clad in a beige jacket and another was armed with a shotgun. The robbers stole $25,000, including an envelope containing worn and mutilated bills removed from circulation by the bank, and $200 of so-called "bait money." In bank parlance bait money is currency with previously recorded serial numbers, used by a bank for subsequent identification in the event of a robbery.

New Haven police and agents from the federal bureau of investigation were dispatched to investigate the robbery. A local resident observed two black males running from the direction of the bank and entering a blue or grey Toyota automobile, bearing a District of Columbia license plate with the numbers "902." A short time thereafter, the car was located nearby in the vicinity of 161 Pine Street. An individual observed two black males leaving the car and entering a six-family home at 161 Pine Street. Shortly after 11 a.m., the defendant and his uncle left the Pine Street house and were stopped at gunpoint by a New Haven police officer. The defendant and his uncle were separated, searched for weapons and the defendant was placed in the backseat of a police cruiser. The defendant was not handcuffed, and the door to the cruiser may have been left open.

Approximately two minutes later, the defendant was requested to produce identification, and upon reaching into his pockets, was requested to exit the cruiser. The defendant pulled an address book and a $20 bill from his back pocket, stating "I don't have an I.D. This is what I have." The currency was ripped, and bore a stamp over the serial number similar to those used by bank tellers when removing bills from circulation. The defendant again was asked to produce identification and this time while emptying his front pockets of a wad of bills and a cigarette lighter, stated: "[T]his is all I have." The currency included several $5 bills which were taken to the bank for serial number comparison with the bank's bait money.

Pending a report on this comparison, the defendant was detained by the police. Approximately twenty-five minutes was required to confirm a match between the serial number of a bill in the defendant's possession and one stolen from the bank, whereupon the defendant was taken to the New Haven police station and advised of his rights. See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When asked at the station how he obtained possession of the stolen money, the defendant responded that he had received the bill in a marihuana sale which had occurred between 8:30 and 9 a.m., a time prior to the occurrence of the robbery.

I

The defendant first claims that the trial court erred in denying his motion to suppress evidence[1] seized from

---

[1] The evidence that the defendant claims should have been suppressed consisted of "money, an address book and clothing seized from him at the time of the arrest, certain statements the defendant allegedly made after his arrest, and hair samples that were seized from him while he was in custody."

him when stopped by law enforcement officers on the morning of the robbery, because he was arrested without probable cause. We disagree.[2]

The defendant claims that the actions of the police at either of two points in the chronology of the events which preceded the actual booking at the police station, constituted an arrest. The defendant claims that he was arrested either (1) upon being placed in the police cruiser, after being subjected to an investigatory stop, or (2) upon being further detained while the law enforcement officers checked the money surrendered by the defendant against the serial numbers of the bait money on file at the bank. We disagree, and hold that at both of these points the defendant was the subject of a lawful investigatory stop. *Terry* v. *Ohio,* 392 U.S. 1, 27–31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The officers' initial reasonable suspicion ripened into probable cause to arrest, upon confirmation that the serial number of one of the bills surrendered by the defendant matched one stolen in the robbery.

At trial and in oral argument before this court, the defendant conceded that the initial *Terry* stop was proper. See *United States* v. *Hensley,* 469 U.S. 221, 229, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) ("if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion"); *State* v. *Mitchell,* 204 Conn. 187, 195–96, 527 A.2d 1168 (1987), cert. denied, U.S. , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). We therefore need not

___

[2] Although the defendant refers to both the federal and state constitutions, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state claims. We, therefore, decline to undertake such an analysis. *State* v. *Carey,* 13 Conn. App. 69, 72 n.1, 534 A.2d 1234 (1987); *Fischer* v. *Goldstein,* 14 Conn. App. 487, 491 n.5, 542 A.2d 731 (1988).

address the propriety of the initial stop. Rather, the defendant's claim addresses two other aspects of the detention: (1) the placement of the defendant in the police cruiser; and (2) the length of the detention itself.

We first examine the defendant's claim regarding his placement in a police cruiser prior to proffering the evidence in question. A primary objective of a *Terry* stop is the preservation of the "status quo" for a short period of time to enable the investigation of a crime or of a potential suspect upon the arousal of a law enforcement officer's reasonable suspicion. *Terry* v. *Ohio,* supra; *State* v. *Braxton,* 196 Conn. 685, 689, 495 A.2d 273 (1985). "Determination of the means that are reasonably necessary to maintain the status quo necessarily depend upon a fact-bound examination of the particular circumstances of the particular governmental intrusion on the personal security of a suspect." *State* v. *Braxton,* supra, 689. In *Braxton,* our Supreme Court upheld the detention of a bank robbery suspect in the rear seat of a police cruiser, while the detaining officer awaited the arrival of a police detective for questioning, and of a witness for possible identification. While the present case differs from *Braxton,* as we are not presented with circumstances in which a lone police officer must detain a suspected criminal, we conclude that our Supreme Court's reasoning is applicable here. "A police officer who has articulable grounds to believe that a crime has been committed and to detain someone who may be implicated in that crime must be permitted to make reasonable use of the resources at his disposal at the site of the investigatory stop. . . . In choosing among his available options, he may reasonably determine that it is less intrusive for him to place the suspect in the back seat of a police car than to secure the suspect's presence through alternate devices such as handcuffs." *State* v. *Braxton,* supra, 690.

We conclude that, in the present case, the detention of the defendant in the rear seat of the police cruiser for a period of two to three minutes by the detaining officers was reasonable on several grounds. First, the officers were faced with detaining two suspects. By separating the defendant and his uncle, and placing the defendant in the rear of the police cruiser,[3] the police were better able to forestall an attempt by the two men, acting in concert, to escape detention.

Second, because the reports to the police regarding the crime indicated (1) that three to four robbers were involved, (2) that at least two were armed, (3) that one or two robbers remained at large, and (4) that the remaining perpetrators were probably still in the immediate vicinity, the placement of the defendant in a cruiser helped prevent intervention by the remaining possibly armed perpetrators.

Finally, placing the defendant in the cruiser freed all of the officers involved, like the officer in *Braxton,* "safely [to] continue to assist in the investigation of the crime without risking the escape of the suspect." *State* v. *Braxton,* supra, 690. We find no error in the actions of the law enforcement officers in this regard.

Addressing the second aspect of the defendant's claim regarding his detention, it is clear that the length of a detention under *Terry* v. *Ohio,* supra, is not determinative of its constitutionality. " 'The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed, or are further aroused, *the stop may be prolonged and the scope*

---

[3] It is unclear from the record, and of no consequence to this appeal, whether the defendant's uncle also was detained in the rear of a second police vehicle.

*enlarged* as required by the circumstances.' " (Emphasis added.) *State* v. *Mitchell,* supra, 197, quoting *State* v. *Watson,* 165 Conn. 577, 585, 345 A.2d 532 (1973). In the course of upholding a twenty minute *Terry* stop, the United States Supreme Court articulated an analysis for determining whether the duration of an investigatory stop was impermissibly long. "In assessing whether a detention is too long in duration to be justified as investigative, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was only to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. . . ." *United States* v. *Sharpe,* 470 U.S. 675, 686–87, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); see *State* v. *Foster,* 13 Conn. App. 214, 217–19, 535 A.2d 393 (1988); *State* v. *Mitchell,* supra, 198.

We conclude that the police acted reasonably in detaining the defendant while the evidence received by them in response to their identification request was checked against the bait money serial numbers on file at the bank. In addition, we note that the defendant's failure to produce identification, also served to prolong the *Terry* stop. We hold that, under the circumstances of the present case, the defendant's twenty-five minute detention was reasonable. Compare *State* v. *Foster,* supra (one hour stop determined reasonable); and cases cited therein.

We therefore conclude that the detention of the defendant by the investigating officers was constitutionally permissible,[4] and that the defendant's motion to suppress was properly denied.

---

[4] We also conclude that the trial court was correct in finding that the defendant voluntarily proffered the evidence gathered by police during his detention on Pine Street. See footnote 1, supra. On the basis of an examination of the totality of the circumstances, we conclude that the state sustained its burden of proving that the evidence in question was given

## II

The defendant next claims error in the trial court's restriction of the cross-examination of state's witness Joy Herring, a tenant of 161 Pine Street. Herring testified that she was in her apartment when the defendant and his uncle arrived on the morning of the robbery, carrying a rifle and a white bag. Direct testimony elicited at trial revealed that at least two other men had visited Herring's apartment that morning. The defendant claims that the trial court erred in restricting his cross-examination of Herring with regard to her ability to describe the men, other than the suspects, who arrived at her apartment on the morning of the robbery. The trial court sustained the state's objections on the grounds of irrelevancy.

"The right of an accused effectively to cross-examine an adverse witness is embodied in the confrontation clause of the sixth amendment. Cross-examination regarding motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial court, but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. 'Thus, a claim of undue restriction on cross-examination ordinarily involves a two-pronged analysis; whether the constitutional standard has been met, and if so, whether the court nonetheless abused its discretion. *State* v. *Gaynor,* [182 Conn. 501, 509–10, 438 A.2d 749 (1980)].' *State* v. *Heinz,* [3 Conn. App. 80, 86, 485 A.2d 1321 (1984)]. (Citations omitted.)" *State* v. *Cox,* 7 Conn. App. 377, 383–84, 509 A.2d 36 (1986). The defendant failed

---

voluntarily, and that the trial court's determination was not clearly erroneous. See *State* v. *Reddick,* 189 Conn. 461, 468–69, 456 A.2d 1191 (1983), and cases cited therein.

to satisfy either requirement. The defendant's cross-examination of Herring revealed that two armed men entered her apartment the morning of the robbery, but that she did not report this to the police when she met with them on two separate occasions a short time thereafter. It was also established through cross-examination that although Herring knew that her apartment building was surrounded by police on the day of the robbery, but that in leaving the apartment, she did not reveal to them that the armed men were located there. We conclude that the evidence elicited through cross-examination was sufficient to allow the jury to evaluate any possible bias the witness held toward protecting any of the other men who visited her apartment that morning. The actual descriptions of the other men were irrelevant, cumulative and collateral to the information obtained through cross-examination, and as such "[their] exclusion did not unduly restrict the defendant's right of cross-examination." *State* v. *Cox*, supra, 384.

The defendant also failed to demonstrate that the trial court abused its discretion by showing that the restrictions on cross-examination were clearly prejudicial. Id.; *State* v. *Gaynor*, supra, 510. The record indicates that the restriction placed on the defendant's cross-examination of the witness addressed only the descriptions of the other male visitors to the witness' apartment on the morning in question. The defendant was not denied an opportunity to test either the witness' credibility or the accuracy or reasonableness of her direct testimony. *State* v. *Cox*, supra, 384, *State* v. *Heinz*, supra, 87. We conclude that the defendant's claim that the trial court unduly limited his constitutional right of cross-examination is meritless.

## III

The defendant's final claim of error is that the trial court's instruction to the jury regarding accomplice

credibility was incorrect as it applied to Joy Herring. The defendant claims that the trial judge erred in failing specifically to charge the jury that Joy Herring's testimony be carefully examined for bias toward the state and against the defendant, as a result of her possible participation in the robbery as an accomplice or coconspirator. We disagree.

"When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception." *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). " 'The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if the charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to given them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues.' " *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986), quoting *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978).

Our review of the record indicates that the trial court instructed the jury with regard to potential bias and prejudices of witnesses in general, and with regard to analyzing the credibility of all witnesses who appeared before them. Further, although the instruction on accomplice testimony and reliability began with a reference to one of the defendant's coconspirators who had turned state's evidence, the instruction was sufficiently broad to address the testimony of Joy Herring, as an uncharged accomplice. The trial court instructed the jury in pertinent part, that, "[i]n weighing the testi-

mony of an accomplice, who has not yet been sentenced or whose case has not yet been disposed of, or *who has not yet been charged for the offenses for which the state has evidence,* you should keep that in mind, in that he may, in his own mind, be looking for or hoping for some favorable treatment in the sentence or disposition of his own case. And that, therefore, he may have such an interest in the outcome of this case, that is, his testimony may have been colored by that fact." (Emphasis added.)

We conclude that the instruction, as a whole, was an adequate and accurate discussion of the law concerning the evaluation of the testimony of an alleged accomplice. We further conclude that, although not directed expressly to the witness in question, the charge "properly covered the substance of the written request." *State* v. *Harrell,* supra, 264.

There is no error.

In this opinion the other judges concurred.