STATE OF CONNECTICUT *v.* JOSE MARINO
(6846)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 3—decision released March 21, 1989

*John F. Kavanewsky, Jr.,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Mark Hurley,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant appeals from a judgment of conviction rendered after a jury found him guilty of possession of narcotics with intent to sell, a violation of General Statutes § 21a-277 (a).

The sole claim made by the defendant in this appeal is that the trial court erred in denying his motion to suppress certain evidence seized without a warrant and a statement made by him.[1] The defendant was arrested on June 22, 1987, and the police seized a certain quantity of cocaine which the defendant subsequently moved to suppress. The police had neither an arrest warrant nor a search warrant.

A search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well delineated exceptions. *State* v. *Badgett,* 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L.

---

[1] Although the defendant alludes to both the federal and state constitutions, he does not offer a separate analysis of the Connecticut constitution as a basis for different treatment of federal and state claims. Consequently, we will abstain from undertaking such an analysis. See *State* v. *Bowden,* 15 Conn. App. 539, 543 n.2, 545 A.2d 591 (1988).

Ed. 2d 373 (1986). It is an established rule that a properly conducted warrantless search incident to a lawful arrest is not illegal as long as the arrest itself is valid. *State* v. *Christian,* 189 Conn. 35, 39, 454 A.2d 262 (1983).

The defendant claims that he was arrested before the police had probable cause to place him under arrest, that his arrest was invalid, and that use of any evidence obtained subsequent thereto should have been suppressed because it was not obtained as an incident to a lawful arrest.

At the hearing on the defendant's motion to suppress, the court found the following facts. At approximately 10:30 a.m. on June 22, 1987, Joseph Lorenti, a Stamford police officer, saw a truck parked in the travel lane of a parking lot in such a way that it prevented other vehicles from leaving their parking spaces. Lorenti had been a police officer for seven and one-half years and had served for thirteen months as a narcotics agent on a statewide task force. He approached the truck and saw two males inside, one of whom was the defendant. The truck had Florida license plates and, as Lorenti spoke to the driver, the defendant got out and walked away. The driver, who did not have an operator's license, identified himself as Alberto Fernandez; Lorenti was unable to obtain any information about an operator's license from police headquarters. He told Fernandez to park the vehicle and not to drive it from the parking lot.

As Lorenti left the area, a person whose name he did not know but whom he had seen previously in the neighborhood called to him. This person told him that the people in the truck had been selling drugs for some time. Lorenti then notified another Stamford patrolman, Louis Gorliacci, that he was going to watch the truck. Gorliacci had received one day's training in nar-

cotics and had field experience including having made arrests. Lorenti and Gorliacci went to a roof that overlooked the parking lot, from which they observed two vehicles and one pedestrian approach the truck. They saw transactions take place when the vehicles and the pedestrian came close to the truck, after which the vehicles and the pedestrian left. They saw nothing transferred but based upon the fact that this was a high crime area where drug dealing had occurred, upon the information received from the person who spoke to Lorenti and upon their own observations, they suspected that they had seen drug transactions. Gorliacci noticed that after each of these contacts, the driver or the defendant would enter the cab of the truck and get out again. After a time, the truck left and the two police officers went to their vehicles to wait for it to return. Upon the truck's return Gorliacci approached it, and the two occupants got out. Gorliacci told them to put their hands on the hood of his car, and the defendant did so but the driver did not. Gorliacci recognized the defendant, having seen him in the area frequently and having arrested him for narcotics violations. Lorenti arrived on the scene after Gorliacci. Both he and Gorliacci were watching the driver when Gorliacci saw the defendant reach into a pocket of his trousers. Gorliacci either pulled the defendant's hand from the pocket or reached into the pocket himself, and a packet was removed from the defendant's pocket that both officers believed, based on their experience and training, contained cocaine.

The court concluded that when Gorliacci approached the truck the police officers had a reasonably articulable suspicion that the defendant and the other man were engaged in illegal drug transactions. The court further concluded that, when the driver refused to comply with the request that he put his hands on the car, and when the defendant reached into his pocket,

Gorliacci had probable cause to believe that the defendant was attempting to hide or destroy evidence of a narcotics transaction and that there were narcotics in the defendant's pocket.

The court also found that Gorliacci had arrested the defendant, handcuffed him and taken him to his police vehicle, and had read him his *Miranda*[2] rights. Gorliacci then asked where the drugs were, and the defendant told him that they were behind the seat in the cab of the truck. Gorliacci found a paper bag containing fifteen bags of cocaine in a hole in the door panel.

The court concluded that Gorliacci had not conducted any sort of intensive interrogation, that there was probable cause to believe that there was contraband in the truck, and that a search of the vehicle in conjunction with a lawful arrest was permissible. The court further found that after his arrest, spontaneously and not in response to any interrogation, the defendant said that they were dealing but were just small dealers and he asked for a break.

The court denied the motion to suppress. After noting that the major thrust of the defendant's motion concerned the evidence found in his pocket and in the truck, the court denied the motion as to the statements, subject to any additional evidence concerning those statements that the defendant might want to submit at trial.

The defendant makes no additional claim as to his statements. As stated succinctly in his brief, the defendant's claim is that (1) he was under arrest prior to the discovery of any evidence or the making of any statement, (2) the arrest was not supported by probable cause, and (3) the acquisition of the evidence sought

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

to be suppressed was causally related to the unlawful arrest. He concedes that the police had a reasonable and articulable suspicion that he was involved in a crime when they accosted him in the parking lot. He claims that he was actually under arrest from the time Gorliacci ordered him to get out of the truck and to put his hands on the hood of Gorliacci's car. He does not contest the conclusion of the trial court that Gorliacci had probable cause to arrest the defendant when the defendant reached into his pocket. The scope of the defendant's claim is thus very narrow.

The police may momentarily detain a person for investigative purposes if the police have a reasonable and articulable suspicion that he has engaged in criminal activity. *State* v. *Rodriguez,* 11 Conn. App. 140, 144, 525 A.2d 1384 (1987). The trial court found, and the defendant concedes, that the police had such a suspicion when Gorliacci approached the defendant and the other man in the parking lot. This was a lawful investigatory stop. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

A primary objective of a *Terry* stop is the preservation of the "status quo" for a short period of time to permit the investigation of suspected crime. *State* v. *Braxton,* 196 Conn. 685, 689, 495 A.2d 273 (1985); *State* v. *Bowden,* 15 Conn. App. 539, 544, 545 A.2d 591, cert. denied, 209 Conn. 810, 548 A.2d 438 (1988). Determination of the means reasonably necessary to maintain the "status quo" necessarily depends on examination of the circumstances of the particular governmental intrusion on the personal security of a suspect. *State* v. *Braxton,* supra; *State* v. *Bowden,* supra. The police officer who has articulable grounds to make such an investigatory stop must be permitted to make reasonable use of the resources at his disposal at the site of the investigatory stop. *State* v. *Bowden,* supra.

When Gorliacci approached the truck, the defendant and the driver got out. At that point, Lorenti had not yet arrived from the roof where he had been watching, and Gorliacci was alone with the two men. It was entirely reasonable for him to instruct the two men to place their hands on the hood of the car. The police officers suspected that the two men were engaged in the illegal sale of narcotics. It is by now common knowledge among police officers that sellers of narcotics are frequently armed. See *State* v. *Amaral*, 179 Conn. 239, 241, 425 A.2d 1293 (1979). It was merely an exercise of prudence on the part of the lone officer to request that the two men place their hands where he could see them.

The defendant argues that Gorliacci arrested him when he ordered him to get out of the truck or, if not then, when he ordered him to place his hands on the hood of the car. The first difficulty with this argument is that there is no finding that Gorliacci ordered the defendant to get out of the truck. The trial court found: "[T]he two occupants [of the truck] dismounted." The defendant neither challenged this finding nor asked for articulation. We have already stated that the direction to the two men to put their hands on the hood of the car was not unreasonable under the circumstances. We hold that this did not amount to an arrest of the defendant.

The trial court found, and the defendant concedes, that when the defendant reached for something in his pocket the suspicion previously held by the police ripened into probable cause to believe that the defendant had narcotics in his possession. The police were then able to make a lawful arrest without a warrant and to make a contemporaneous search of the person of the defendant incidental to that arrest. *State* v. *Guertin*, 190 Conn. 440, 454, 461 A.2d 963 (1983). They were

also permitted to search the truck. *State* v. *Santiago,* 17 Conn. 273, 277, 552 A.2d 438 (1989).

Our holding as to the time of the arrest is also dispositive of the defendant's claim that the statements he made to the police and the narcotics found in the truck should have been suppressed. The only claim as to those statements raised by the defendant is that they all flow from an invalid arrest made before the police had probable cause. We do observe, however, the defendant was a passenger who claimed no possessory interest in the truck. Because it does not clearly appear that he claimed either a possessory interest in the truck or a possessory interest in the cocaine seized from the truck and thus that he had a reasonable expectation of privacy, he is precluded from contesting the search of the truck. *State* v. *Delarosa,* 16 Conn. App. 18, 32, 547 A.2d 47 (1988).

The conclusions of the trial court are legally and logically correct and we find no error in the denial of the motion to suppress.

There is no error.

In this opinion the other judges concurred.