STATE OF CONNECTICUT *v.* TRACY FISHER
(13436)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued February 1—decision released April 11, 1989

*William B. Collins,* special public defender, for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attorney, and *James Thomas,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Tracy Fisher, was charged in a substitute information with the crimes of murder in violation of General Statutes § 53a-54a (a),[1] conspiracy to commit murder in violation of General

---

[1] General Statutes § 53a-54a (a) provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

Statutes §§ 53a-48 (a)[2] and 53a-54a (a) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[3] The charges arose out of the shooting death of Thomas Dixon and the wounding of Barrington Solomon on May 12, 1987, while the two men sat drinking and talking on the first floor rear porch of a three story multiple family dwelling located at 104 Enfield Street in Hartford. A witness testified that between 8:30 and 9 o'clock that evening he saw the defendant and Michael Walker alternately fire bursts from an automatic or semiautomatic weapon at the men on the porch. Other witnesses said they saw the defendant and Walker fleeing from the scene, with the defendant in possession of the weapon. The shooting apparently came about as a result of bad blood between Walker and Solomon brought about by a previous shooting in which Solomon had allegedly severely wounded Walker's brother. The deceased, it appears, simply happened to be in the wrong place at the wrong time. A jury convicted the defendant of all three counts of the substitute information and the trial court sentenced him to a term of fifty years in prison.

At trial, a written statement of the defendant given to Hartford police officers on June 9, 1987, was admitted into evidence. Although generally exculpatory, it placed the defendant near the scene of the crime in the company of Walker on the evening of May 12, 1987, and also indicated that he was associated with Walker

---

[2] General Statutes § 53a-48 (a) provides: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-59 (a) (1) provides: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

in the distribution of narcotics. The defendant objected to the admission of the statement and moved to have it suppressed. On appeal, as he did at trial, the defendant argues that his written statement should have been excluded because the state failed to meet its burden of proving that he had voluntarily, knowingly and intelligently waived his *Miranda* rights.[4] He then argues that without the written statement there was insufficient evidence to convict him of the crimes charged.

After a hearing on the defendant's motion to suppress his written statement, the trial court found that the state had proved by a preponderance of the evidence that the statement had been given by the defendant "knowingly and intelligently, after a voluntary waiver and advisement of his rights under *Miranda*." It, therefore, denied the defendant's motion. We find no error. While we agree with the trial court and have examined its findings of fact, "our usual deference to factfinding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983); *State* v. *Pellegrino,* 194 Conn. 279, 288–89, 480 A.2d 537 (1984); see also *State* v. *Shifflett,* 199 Conn. 718, 729, 508 A.2d 748 (1986); *State* v. *Carey,* 13 Conn. App. 69, 73, 534 A.2d 1234 (1987).

From the record it is evident the trial court could reasonably have found the following facts. The defendant was twenty-eight years old, had completed the eleventh grade at Weaver High School and could read and write English; he had been arrested approximately thirty-one times between 1974 and 1987; and he had been advised

---

[4] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of his *Miranda* rights on numerous prior occasions. Further, the trial court could reasonably have found that the defendant's initial contact with the Hartford police concerning this case occurred on May 15, 1987. At that time the defendant had been arrested on several unrelated warrants and was at Hartford police headquarters. There he was approached by Detective Michael Dakin, who advised the defendant of his rights and asked where he had been on May 12, 1987. The defendant replied that he did not know and terminated the conversation.

Thereafter, on or about May 19, 1987, Dakin went to see the defendant at the Morgan Street detention center. There the defendant indicated that he wished to speak to Dakin and signed a correction department form to that effect. Dakin again advised the defendant of his *Miranda* rights and questioned him concerning his activities on May 12, 1987. In response the defendant gave Dakin an oral statement that included much of the same information that he provided in the contested written statement of June 9, 1987.[5]

Subsequently, on June 8, 1987, Dakin received a telephone call from Margaret Johnson, the defendant's girlfriend, informing him that the defendant, who by then had been arrested for Dixon's murder and was housed at the Hartford community correctional center, wished to speak to him and "tell the truth." Consequently, on June 9, 1987, Dakin and his partner, Detective Clyde Mitchell, went to meet with the defendant at the correctional center. There the warden verified that the defendant wished to speak to the detectives and had the defendant sign a correction department "permission form" to that effect.

---

[5] At trial, the defendant did not contest the admissibility of this conversation or that of May 15, 1987, nor has he challenged the admissibility of those conversations on appeal. See Practice Book §§ 288, 4065.

Before questioning the defendant at the correctional center, Dakin handed him a Hartford police department form containing an advisement of the rights required by *Miranda* and a waiver of those rights. Dakin then had the defendant read "a couple of lines [of the form] out loud." Thereafter, for approximately five minutes, the defendant appeared to read the entire form, "periodically" initialed each right and then placed his signature on the signature line provided for the waiver of rights. The defendant thereafter spoke to the detectives and agreed to give a written statement. In transcribing the statement the defendant talked and Dakin typed, a process that took approximately ninety minutes. When the statement was completed, Dakin asked the defendant to read a portion of it out loud. After he had done so, the defendant was requested to read the entire statement to himself, initial each paragraph, and sign it if he agreed that it was correct. Dakin testified that after the defendant spent approximately ten minutes appearing to read the statement, the defendant initialed and signed it and it was then witnessed by himself and Mitchell, and acknowledged before a correction officer. Each paragraph of the defendant's two and one-half page statement is, in fact, initialed by the defendant, each page displays his signature at the bottom, is witnessed by Dakin and his partner, and acknowledged before a correction officer. The defendant claims that this written statement should have been suppressed because he was not "sufficiently tested to see if he really understood his rights and was then warned he could waive them at his peril." We disagree.

The state bears the burden of establishing by a fair preponderance of the evidence that the defendant was informed of and understood his rights and thereafter effected a voluntary, knowing and intelligent waiver of those rights. *State* v. *Hernandez,* 204 Conn. 377, 395, 528 A.2d 794 (1987); *State* v. *Gray,* 200 Conn. 523, 530,

512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); *State* v. *Smith,* 200 Conn. 465, 481, 512 A.2d 189 (1986); *State* v. *Alfonso,* 195 Conn. 624, 628, 490 A.2d 75 (1985). There is, however, no talismanic incantation of rights required to satisfy *Miranda's* strictures. *California* v. *Prysock,* 453 U.S. 355, 359, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981); *Martin* v. *Wainwright,* 770 F.2d 918, 931 (11th Cir. 1985), cert. denied, 479 U.S. 909, 107 S. Ct. 307, 93 L. Ed. 2d 281 (1986). Further, "it is not essential that *Miranda* warnings be given in oral rather than written form." *State* v. *Appleton,* 459 A.2d 94, 96 (R.I. 1983); *United States* v. *Sledge,* 546 F.2d 1120, 1122 (4th Cir.), cert. denied, 430 U.S. 910, 97 S. Ct. 1185, 51 L. Ed. 2d 588 (1977); *United States* v. *Alexander,* 441 F.2d 403, 404 (3d Cir. 1971); *Commonwealth* v. *Day,* 387 Mass. 915, 918 n.8, 444 N.E.2d 384 (1983).

In this case there was evidence that the defendant wished to talk to Dakin and arranged a meeting with him at the correctional center in order to do so. There was also evidence that the defendant could and did read the *Miranda* rights and the waiver contained in the Hartford police department form presented to him by Dakin at the correctional center. Further, there was evidence that the defendant was given the opportunity to read his statement and did so, initialing each paragraph and signing each page. It is true that before waiving his *Miranda* rights the defendant was not quizzed to determine the depth of his understanding of those rights or to establish his specific reading grade level. There is, however, no exact "test" to determine whether a defendant has voluntarily, knowingly and intelligently waived his rights. The answer to that question must be gleaned from the facts in each case. *United States* v. *Hayes,* 385 F.2d 375, 377 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S. Ct. 1250, 20 L. Ed. 2d 106 (1968); *State* v. *Toste,* 198 Conn. 573, 580–81, 504 A.2d 1036 (1986).

In arriving at that answer the trial court was not required to take leave of its common sense. When someone with the defendant's extensive experience with the criminal justice system initiates a meeting with police officers, demonstrates an ability to read, and appears to read his *Miranda* rights, and thereafter executes a written waiver of those rights, these circumstances constitute " 'strong proof' " that the waiver and the subsequent statement were voluntarily, knowingly and intelligently given. *State* v. *Chung,* 202 Conn. 39, 50–51, 519 A.2d 1175 (1987); see *State* v. *Hernandez,* supra, 397; *State* v. *Toste,* supra, 581. We certainly cannot find that the trial court was clearly erroneous in so finding. *United States* v. *Smith,* 608 F.2d 1011, 1013 (4th Cir. 1979); *State* v. *Pittman,* 209 Conn. 596, 606, 553 A.2d 155 (1989). The trial court therefore did not err in admitting into evidence the defendant's written statement of June 9, 1987.

The defendant conceded at oral argument that if his written statement was properly admitted at trial there was sufficient evidence to convict him. We agree.

There is no error.

In this opinion the other justices concurred.