[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SUPPRESS
The defendant is charged with illegal possession of a weapon in a motor vehicle, Connecticut General Statutes § 29-38 and has filed a motion to suppress a gun seized from his car on the day of his arrest. On September 18, 1996, a hearing was held. The State filed an extensive and well-researched brief; the defendant did not file a brief.
The facts are that Sergeant Forbes of the Groton City Police Department was on patrol on September 2d 1995, when he received a radio dispatch instructing him to investigate a suspicious auto in the area of the Branford Manor Condominiums. The named citizen complainant had told the police that a vehicle had been circling the playground in that area in the past two week period and was now in the location. The citizen provided the police with a Connecticut registration number and a description of the two occupants. The citizen expressed concern about the intentions of the operator towards the children in the playground.
The officer received this information at 7:46 p. m. according to his testimony and estimated he arrived in the area at approximately 8:00 p. m. When he arrived he saw the vehicle and it matched the description, the registration number and the occupants also were as described.
The sergeant testified that before he could approach the vehicle, it stopped in a private parking area. He pulled in behind the car and momentarily flashed his overhead lights to let the driver know he had parked behind his car.
Sergeant Forbes approached the driver who was a white male, the officer observed the passenger to be an elderly female. The police officer explained his reasons for the stop, and as he did, another officer also arrived and parked nearby. Sergeant Forbes said he could smell alcohol on the driver's breath but did not think the operator was either impaired or under the influence of alcohol.
The operator of the vehicle was asked why he was in the area and stated he was looking for someone. Sergeant Forbes knew the party the defendant was looking for and offered assistance, but the defendant declined the help. Sergeant Forbes asked the defendant if he had been drinking, but the defendant denied drinking. CT Page 662
The sergeant asked what was in the two paper bags in the car and the driver said the officer could look in the bags. These bags contained beer. The officer also noticed a canvas bag behind the driver's seat. The operator said he owned the canvas bag. The police officer asked if he could see what was in the bag and the defendant replied, "No, I don't have to show you."
The officer also spoke with the passenger who turned out to be the defendant's mother. During the course of this stop, the officer learned the identity of the driver, that he lived nearby and that he was not wanted for any motor vehicle or criminal charges although he had been arrested in the past.
The officer testified that he felt the stop was over because he had no probable cause to arrest the defendant for any crime or search for any evidence. Sergeant Forbes testified as he was leaving, he asked once more, "You sure you don't want to let me look in the bag?" The officer testified he was surprised when the defendant answered, "Well, I'm willing as long as I don't have to take it out of the car."
At this point, the defendant opened the canvas bag and was removing items from the bag when the officer saw ammunition in a clear plastic bag inside the canvas bag. The officer asked, "Where's the gun?" and instructed the defendant not to go near the canvas bag. From a position outside the vehicle, the officer leaned into the car and saw what appeared to be the wooden handle of a revolver. The officer removed the defendant from the car after seizing the gun, asked if the defendant had a pistol permit and arrested the defendant when he answered, "No." The officer testified the arrest occurred at 8:29 p. m.
The first question that must be answered is whether or not the police officer had a right to approach the stopped vehicle and conduct an investigation.
Investigatory Terry-type stops (named after Terry v. Ohio,392 U.S. 1 (1968)) of motor vehicles by law enforcement officers are constitutionally permissible if the following criteria are satisfied. The stop must be justified by some objective manifestation that the occupant or occupants of the motor vehicle in question have been involved in a completed felony, or are, or are about to be, engaged in criminal behavior. See United Statesv. Hensley, 469 U.S. 221, 227-229 (1985); State v. Lamme,216 Conn. 172, 184 (1990); State v. Harrison, 30 Conn. App. 108, CT Page 663 111-113 (1993); State v. Mitchell, 7 Conn. App. 46, 58 (1986),rev'd in part on other grounds, 204 Conn. 187 (1987); see alsoBerkemer v. McCarty 468 U.S. 420, 439 (1984); State v. Cofield,220 Conn. 38, 44 (1991) (en banc); State v. Anderson,24 Conn. App. 438, 441, cert. denied, 219 Conn. 903 (1991). The cause that is sufficient to authorize the stop requires that the detaining officer must have, based upon the totality of the surrounding circumstances, a particularized and objective basis for suspecting the occupant of criminal activity, either committed or about to be committed. See Florida v. Royer, 460 U.S. 491, 498
(1983) (plurality opinion); State v. Kyles, 221 Conn. 643, 659-60
(1992); Lamme, 216 Conn. at 184; State v. Aillon, 202 Conn. 385,399 (1987) (Aillon VI); the requisite particularized suspicion, in turn, must be reasonable and articulable and contain two elements, namely, (1) an assessment based upon all of the circumstances, including objective observations made by the detaining officer, information received by him from police reports, if such are available, and consideration of the modes of operation of certain kinds of law breakers, from which a trained law enforcement officer draws inferences and makes deductions based upon his professional experience and expertise; and (2) the assessment must raise a suspicion that the particular individual or individuals being stopped are, or are about to be, engaged in wrongdoing. United States v. Cortez, 449 U.S. 411, 417-18 (1981);State v. Scully, 195 Conn. 668, 674-75 (1985); see Cofield,220 Conn. at 44-47; see also United States v. Brignoni Ponce,422 U.S. 873, 881-82 (1975); Aillon VI, 202 Conn. at 399 402; Statev. Aversa, 197 Conn. 685, 690-92 (1985), State v. Carter,189 Conn. 611, 616-20 (1983) (Carter I); Harrison,30 Conn. App. at 112;State v. Williamson, 10 Conn. App. 532, 541, cert. denied204 Conn. 801 (1987).
In analyzing the facts present in this case, the Court has no problem concluding that the police officer was acting within his authority when he approached the vehicle. It is a sad fact of everyday life that children in playgrounds are likely targets for all types of crimes including those committed by strangers such as kidnapping and sexual assault. The police and the public are legitimately concerned about suspicious activities in the vicinity of these areas and the power of the police to lawfully investigate these situations should be broad.
In cases of this type the stop must be of temporary duration and last no longer than is reasonably necessary to effectuate the purpose of the detention, taking into consideration whether the CT Page 664 police diligently pursue a method of investigation that is likely to confirm or dispel their suspicions quickly, and whether they are acting in a swiftly developing situation. United States v.Sharpe, 470 U.S. 675, 685-87 (1985) (refusing to place a rigid time limitation on investigative stops; each case must be assessed on its own particular facts and circumstances);Mitchell, 7 Conn. App. at 60-62; see State v. Mitchell,204 Conn. 187, 198-99 (1987); Aillon VI, 202 Conn. at 399-402; Aversa,197 Conn. at 692-93; State v. Foster, 13 Conn. App. 214, 218-19
(1988).
The duration of the stop exceeded the officer's authority. In this case, it should not be forgotten that no crime had been reported that day and no series of incidents had occurred in that area of a criminal nature previously, the officer was simply investigating suspicious activity.
The officer must limit the duration of the detention to a period no longer than is necessary to effectuate the purpose of the stop, and should employ investigative methods that are the least intrusive means reasonably available to verify or dispel his suspicions in a short period of time. Royer, 460 U.S. at 500; see State v. Bowden, 15 Conn. App. 539, 544-46 (25 minute detention, during part of which defendant was separated from another suspect and placed in a police cruiser, deemed, under the circumstances of an ongoing investigation of a bank robber by three individuals, to be constitutionally reasonable), cert.denied, 209 Conn. 810 (1988).
The testimony revealed here that the officer learned that the subject lived in the area, was not wanted and might have had something to drink. At the hearing, Sergeant Forbes testified that the defendant's explanation of his presence in the area was not satisfactory but the officer could not explain why. Although the officer testified that he had a "vague feeling that he was trying to hide something," and that the defendant appeared "upset, off balance and a little nervous," there was really nothing else which entitled the officer to prolong the stop. It is reasonable to conclude that the stop, in fact, lasted for almost thirty minutes and although the officer testified the information necessary to dispel any suspicion in this case was diligently pursued it is hard to justify the length of the stop given these facts
Acknowledging that there is no time limit on these stops, the CT Page 665 Court concludes that in the officer's own words, "there was nothing more he could do with this encounter." He was not authorized to ask any additional last questions as he walked away. To put it simply, when it's over, it's over! When the officer persists with his questions about the canvas bag, the officer's actions cease to be related in scope to the circumstances which sanctioned the interference in the first place.
Although this conclusion effectively ends the argument on the issue of suppression, the issue of consent needs to be addressed. The officer never testified and the State did not argue that the circumstances of this case supported a warrantless search of the passenger compartment of the vehicle for weapons. There was no testimony that the officer felt the defendant was potentially dangerous.
The State does, however, seek to justify the actual search as consensual.
A consent to a warrantless search is an exception to the requirements of both a warrant and probable cause, and must be given freely and voluntarily, and must not result from coercion or duress, express or implied. In determining whether this standard has been satisfied by the prosecution, a court will look to the totality of the surrounding factual circumstances, including the characteristics of the accused. See Schneckloth v.Bustamonte, 412 U.S. 218, 226, 227, 248 (1973); State v. Reagan,209 Conn. 1, 7-8 (1988); State v. Torres, 197 Conn. 620, 627
(1985); State v. Zindros, 189 Conn. 228, 244 (1983), cert.denied, 465 U.S. 1012 (1984); State v. Adams, 176 Conn. 138, 141
(1978).
Whether consent to search was voluntary is a factual question, to be determined from the totality of the circumstances. No one factor in controlling. Torres,197 Conn. at 627; State v. Reddick, 189 Conn. 461, 469 (1983); see Reagan,209 Conn. at 7-8; State v. Kristy, 11 Conn. App. 473, 478 (1987).
The State has the burden of proving consent, and that burden is not satisfied by showing no more than acquiescence to a claim of lawful authority. Accordingly, the State must affirmatively establish by the preponderance of the evidence that the consent was, in fact, freely and voluntarily given. See State v. Jones,193 Conn. 70, 79 (1984); State v. MacNeil, 28 Conn. App. 508, CT Page 666 513, cert. denied, 224 Conn. 901 (1992); State v. Van Der Werff,8 Conn. App. 330, 341 (1985).
The question by Sergeant Forbes about the canvas bag in this case after the defendant had clearly and unequivocally exercised his right not to grant permission for a search is akin to an officer asking "one last time" for a suspect to answer police questions while in custody after the prisoner has asked for an attorney. No means no! The continued requests to search and the eventual acquiescence by the defendant at the end of a thirty minute detention, despite the polite and professional manner of the officer, does not convince this Court that the permission was voluntary. The State has not satisfied its burden.
For these reasons, the defendant's motion to suppress is granted.
O'Keefe, J.