STATE OF CONNECTICUT *v.* CHARLES BRAXTON, JR.
(10475)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued June 5—decision released July 16, 1985

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Joette Katz* and *Eugene Riccio,* public defenders, and *Temmy Ann Pieszak* and *Susan M. Hankins,* assistant public defenders, for the appellant (defendant).

*Patrick J. Clifford,* assistant state's attorney, with whom were *Julia D. Dewey,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, for the appellee (state).

PETERS, C. J. The principal issue on this appeal from a robbery conviction is whether a police officer con-

ducted an investigative detention in an unconstitutionally intrusive manner. The defendant, Charles Braxton, Jr., was charged with the commission of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] The defendant's constitutional claim was rejected by the trial court, which ruled admissible certain evidence seized and statements made during the detention. After a trial to a jury, which found the defendant guilty of the crime charged, he was sentenced to a term of not less than three nor more than ten years, and he filed a timely appeal.

The jury could reasonably have found the following facts. At approximately 9:20 p.m. on July 20, 1979, a convenience store at Fitch and Blake Streets in New Haven was robbed by three black men, one of whom was armed with a rifle. Approximately sixty-five dollars, including a ten-dollar roll of quarters, was taken from the cash register. The men attempted to flee from the scene of the crime in a station wagon which they were forced to abandon when it stalled just outside the store's parking lot. The men then ran off in the direction of Dyer Street.

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

The information against the defendant also charged him with violation of the accessory statute, General Statutes § 53a-8. "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The New Haven police department immediately broadcast a description of the robbery. The police radio dispatch reported that three or four black male robbery suspects were running away from Fitch and Blake Streets easterly toward Dyer Street. Upon hearing the radio dispatch, police officer Everett C. Nichols, who was in a marked police car, began a search of the area in the vicinity of the robbery. He came upon the defendant emerging from the driveway of a home on a residential street near Dyer Street, four to six blocks from the scene of the robbery. The defendant's location, physical appearance and demeanor aroused Nichols' suspicions. The defendant stated, in reply to Nichols' questions, that he was in the area because his car had broken down on Fitch Street due to overheating and he was therefore walking home.

Officer Nichols decided to detain the defendant for questioning by police detective Michael Sweeney, whom he knew to be investigating the robbery, and for a possible identification by a witness to the robbery. Nichols patted the defendant down, found no weapons, and thereafter placed the defendant in the back seat of the police car to await Sweeney's arrival. Nichols informed the defendant that he would be taken home when Sweeney had completed his inquiry. The defendant, although not uncooperative, did not expressly consent to his detention.

While the defendant was being detained in the police car, Nichols made radio contact with police headquarters to report the existence of a possible robbery suspect. Shortly thereafter, Nichols heard a further radio dispatch indicating that the station wagon used in the robbery was registered to a Charles Braxton of New Haven. The defendant then acknowledged that he was Charles Braxton and that he was the owner of the station wagon. After an unsuccessful attempt to have one of the witnesses to the robbery identify the defendant,

the defendant was, at about 9:40 p.m., arrested and searched by Sweeney. The search revealed that the defendant had on his person ten dollars in loose quarters, miscellaneous change, and a set of car keys that fit the station wagon.

In his appeal from his conviction for violation of General Statutes § 53a-134 (a) (4), the defendant raises two issues. His principal claim is that he was unconstitutionally detained when he was placed in officer Nichols' police cruiser. His secondary claim is that the evidence presented at trial was insufficient to sustain the verdict rendered against him.

I

The defendant's challenge to the propriety of his detention is a narrow one. The defendant concedes that officer Nichols had sufficient articulable grounds to justify the defendant's original detention pursuant to the rule of *Terry* v. *Ohio,* 392 U.S. 1, 27–31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and that the duration of his detention did not exceed the limitations authorized by *United States* v. *Sharpe,* 470 U.S.    , 105 S. Ct. 1568, 1575–76, 84 L. Ed. 2d 605 (1985).[2] The defendant maintains that it was nonetheless unconstitutional for Nichols to effectuate the defendant's detention by placing him in the officer's police car. Relying on *Hayes* v. *Florida,* 470 U.S.    , 105 S. Ct. 1643, 1646–47, 84 L. Ed. 2d 705 (1985), and *Florida* v. *Royer,* 460 U.S. 491, 500–509, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983), the defendant argues that this method of detention was unreasonably intrusive, and hence unconstitutional, and

---

[2] Although the defendant has formally invoked both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution, he has proffered no argument that the rights afforded to him by the federal and the state constitutions are in any way distinguishable with respect to the substantive issue that he has raised. We see no reason, on the facts of this case, independently to undertake such an analysis.

that materials seized and statements made as a result of his detention should therefore have been suppressed. We disagree.

One function of a constitutionally permissible *Terry* stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime. A police officer who has proper grounds for stopping a suspect has constitutional permission to immobilize the suspect briefly in order to check a description or an identification, so long as his conduct is " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry* v. *Ohio,* supra, 19; see Model Code of Pre-Arraignment Procedure (Proposed Official Draft 1975) § 110.2 (3), and pp. 284–85.[3] Determination of the means that are reasonably necessary to maintain the status quo necessarily depends upon a fact-bound examination of the particular circumstances of the particular governmental intrusion on the personal security of a suspect. *Michigan* v. *Long,* 463 U.S. 1032, 1051, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *United States* v. *Place,* 462

---

[3] The Code provides:

"Section 110.2 STOPPING OF PERSONS . . . .

"(3) USE OF FORCE. In order to exercise the authority conferred in Subsections (1) and (2) of this Section [to stop a person or a vehicle], a law enforcement officer may use such force, other than deadly force, as is reasonably necessary to stop any person or vehicle or to cause any person to remain in the officer's presence."

The accompanying commentary at pages 284–85 states in part:

"(10) *Use of Force.* Subsection (3) authorizes the use of such force, other than deadly force, as is reasonably necessary to stop any person or vehicle, or to cause any person to remain in the officer's company. Although it is not envisaged that force would have to be used frequently, it would be frustrating and humiliating to the officer to grant him an authority to order persons to stop, and then ask him to stand by while his order is flouted. Nor is it anomalous that this section authorizes force to compel the persons to stop but relies thereafter on the person's cooperation. Certainly a person who has had to be forcibly stopped is unlikely to prove cooperative thereafter, but the officer may wish to immobilize such a person in order to check a description or identification, or simply to procure a period of time during which he can decide whether to make an arrest."

U.S. 696, 704–705, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983); *Florida* v. *Royer,* supra, 499–500; *State* v. *Januszewski,* 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); *State* v. *Watson,* 165 Conn. 577, 584–85, 345 A.2d 532 (1973); 3 LaFave, Search and Seizure; A Treatise on the Fourth Amendment (1978) § 9.2, esp. pp. 30–31.

A police officer who has articulable grounds to believe that a crime has been committed and to detain someone who may be implicated in that crime must be permitted to make reasonable use of the resources at his disposal at the site of the investigatory stop. Without immediate access to the assistance of fellow officers, a lone police officer may reasonably need the facilities of his police cruiser for a brief period of time so that he may safely continue to assist in the investigation of the crime without risking the escape of the suspect. In choosing among his available options, he may reasonably determine that it is less intrusive for him to place the suspect in the back seat of a police car than to secure the suspect's presence through alternate devices such as handcuffs. Cf. *United States* v. *Lee,* 372 F. Sup. 591, 593 (W.D. Pa.), aff'd without op., 505 F.2d 731 (3d Cir. 1974), cert. denied, 420 U.S. 933, 95 S. Ct. 1138, 43 L. Ed. 2d 407 (1975); *State* v. *Aguirre,* 130 Ariz. 54, 56, 633 P.2d 1047 (1981); *State* v. *Griffin,* 459 A.2d 1086, 1089–90 (Me. 1983). We therefore conclude that the trial court correctly found that the manner of the defendant's detention was constitutionally permissible.

## II

The defendant's alternate challenge to his conviction urges us to find that the evidence adduced at trial was insufficient to establish his guilt. This issue was raised in the trial court by timely motions for acquittal both

at the end of the state's case and at the conclusion of the presentation of all of the evidence. We agree with the trial court's denial of these motions.

When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983). We then determine whether " 'the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Duhan,* 194 Conn. 347, 355, 481 A.2d 48 (1984). In our appraisal of the evidence, it is of no moment that much of the relevant evidence may be circumstantial. We have repeatedly noted that "there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." *State* v. *Perez,* supra, 227; *State* v. *Cimino,* supra, 211.

Review of the evidence in this case reveals that the jury could properly have found the defendant guilty of having committed the crime of robbery or of having been an accomplice.[4] The defendant was discovered near the scene of the crime within minutes of its commission. From his appearance, including the fact that he was perspiring profusely and breathing heavily, it

---

[4] The information against the defendant charged him both as a principal and as an accessory. See footnote 1, supra.

was inferable that he had been running. His car had been parked at the scene of the robbery and was used as the attempted getaway car. His explanation that he had abandoned the car because the engine had overheated was undermined by the combination of evidence that the car had been driven, albeit briefly, after the robbery, that it had not been hot-wired, and that the defendant himself had the car keys in his possession when he was detained and then arrested. If the defendant had indeed been walking from Fitch Street to his home, as he claimed, his location when officer Nichols came upon him was not on the most direct route to his home on Howard Avenue. Among the items discovered when the defendant was searched upon his arrest was ten dollars in loose quarters, the precise amount contained in the wrapped roll of quarters stolen during the robbery. Despite the inability of the witnesses at the crime to identify the defendant, we conclude that this evidence, in its totality, was sufficient to sustain the verdict against the defendant.

There is no error.

In this opinion the other judges concurred.