STATE OF CONNECTICUT *v.* ANDRES RODRIQUEZ
(12334)

SHEA, DANNEHY, SANTANIELLO, CALLAHAN and MENT, Js.

Argued April 10—decision released August 5, 1986

*Maxwell Heiman,* with whom, on the brief, was *William J. Tracy, Jr.,* for the appellant (defendant).

*Bernadette Conway,* special deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *James G. Clark,* deputy assistant state's attorney, and *Mary Galvin,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in an amended information with arson in the first degree in violation of §§ 53a-111[1] and 53a-8[2] of the General Statutes. He was found guilty by a jury and sentenced to imprisonment for a term of thirteen years. He has appealed from the judgment rendered on the jury ver-

[1] "[General Statutes (Rev. to 1981)] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

"(b) Arson in the first degree is a class A felony."

[2] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

dict. On appeal, he claims that the trial court erred: (1) in denying his motion for a judgment of acquittal because of insufficient evidence; (2) in instructing the jury with respect to General Statutes § 53a-8; and (3) in failing to inquire into his trial counsel's conflicting representation of the defendant and a witness. The defendant also claims that the conduct of defense counsel denied him the effective assistance of counsel guaranteed by the sixth and fourteenth amendments to the United States constitution. We find no error.

## I

The defendant first claims that the evidence adduced at the trial was insufficient to sustain a conviction and that the trial court erred by denying his motion for acquittal. "When a claim on appeal challenges the sufficiency of the evidence, we undertake a two-part task. 'We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984).' *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); see *State* v. *McCarthy,* 197 Conn. 166, 178, 496 A.2d 190 (1985)." *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986).

Although the jury may "draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture." *State* v. *Saracino,* 178

Conn. 416, 419, 423 A.2d 102 (1979). Each essential element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The relevant question in our review " ' "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U. S. [356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)]." (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).' *State* v. *Morrill,* 197 Conn. 507, 512, 498 A.2d 76 (1985)." *State* v. *Brown,* 199 Conn. 14, 23, 505 A.2d 690 (1986). "In reviewing the sufficiency of the evidence supporting a jury verdict, this court must construe that evidence in the most favorable manner reasonably possible to support the jury verdict. *Josephson* v. *Meyers,* 180 Conn. 302, 313, 429 A.2d 877 (1980); *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *State* v. *Rossier,* 175 Conn. 204, 207, 397 A.2d 110 (1978)." *State* v. *Martin,* 189 Conn. 1, 8, 454 A.2d 256 (1983).

The jury could reasonably have found the following facts. On March 21, 1982, at approximately 1:44 a.m., the Agron Superette, which was owned by the defendant but in his wife's name and located at 113 Putnam Street in New Haven, was firebombed. From her bedroom window across the street, a neighbor saw an hispanic male, with a large "afro" hairstyle, approach the store, look around, and then throw an object against a store window. Immediately after the object was thrown she heard glass break and saw fire. The neighbor knew the defendant and testified that it was definitely not the defendant who hurled the object. The breaking of

the window set off an audible outside alarm and also alerted the security company, which monitored the store, to a possible burglary. The security company immediately notified the New Haven police department.

Officer Leo Bombalicki was dispatched to the scene to investigate. When he arrived at approximately 1:52 a.m., he saw, on the ground, flame and smoke emanating from a glass quart Coca Cola bottle with a rag stuffed in it. He referred to the device as a "Molotov cocktail." The bottle was located beneath a broken window between a six foot wire fence and the building housing the Agron Superette. The fence was approximately two feet eight inches from the building. The side of the building in the area of the window was scorched.

Firemen and equipment from a nearby fire station arrived at the scene at 1:56 a.m. and immediately extinguished the fire with a dry chemical. Fire and police personnel were then admitted to the store by the defendant who had come from his home at 139 Putnam Street, a short distance away. The defendant's wife testified that he had been awakened and had gone to the store in response to a telephone call that the store's alarm system had been activated. On gaining entry to the store, firemen found a hazy smoke condition inside caused by smoldering cartons. The cartons had been ignited by a portion of the gasoline soaked rag from the "Molotov cocktail" which had fallen inside the store through a three and one-half to four inch triangular hole in the store window caused by the impact of the bottle. Inside the store, next to a counter and approximately four feet away from, and at a slight angle to the window, firemen found an uncapped plastic gallon container half to three-quarters full of a liquid. The plastic cap from the container was found on the sidewalk outside the building in the area of the broken window. A plastic milk crate of the type used in

the store was found in the same area outside the fence. A fire official testified that the perpetrator possibly stood on the crate to hurl the bottle. Later testing established that the liquid in both the quart bottle and the gallon container was gasoline and that the contents of both containers were similar in chemical makeup and "most likely" came from the same source. Testing also established the presence of gasoline on the bottle cap. There was expert testimony that the combination of the gasoline in the plastic container and in the bottle had the potential explosive power of twelve to fourteen sticks of dynamite and that an explosion of that magnitude could have occurred if the bottle had penetrated the window. The bottle did not penetrate because the window was made of plexiglass, which is stronger and more impact resistant than regular window glass. Nowhere in the record, however, is there any evidence that the plexiglass window had been installed while the defendant was associated with the store or that he knew the window was plexiglass or that he was aware of the properties of plexiglass.

Early in the morning of March 21, after the incident, the defendant gave a statement to fire investigator John Esposito of the New Haven fire department in which he said that when he arrived at the scene he saw a Coca Cola bottle on fire next to the store and that he made that observation from some fifty feet away. Prior to this time no one had told the defendant what kind of bottle had been involved and it would have been virtually impossible to observe the label or determine the specific type of bottle from that distance under the existing conditions. Police and fire officials also testified that the defendant was fully dressed when he arrived, not at all disheveled as though he had just been awakened, and that his demeanor, in view of the circumstances, was calm and somewhat unusual.

The Agron Superette was nominally owned by Elizabeth Rodriquez, the defendant's wife. The lease for the premises was in her name and she was the backer for the grocery store beer permit. The defendant, however, actually owned and managed the store although he spent most of his time at another store he owned at 142 Putnam Street. The Agron Superette was run on a day-to-day basis by Francisco Lopez, an employee, who opened and closed the store and waited on customers.

On March 20, 1982, Lopez closed the store for the night at approximately 6 p.m. When he closed, he activated the alarm system, secured the two locks on the front door, and padlocked the gate on the fence surrounding the store. He testified that, at the time he left, the gasoline filled container was not in the store. When police and fire personnel checked the store after the fire they found it secure, all inside and outside doors were locked, there was no sign of a burglary or forced entry, and they found the container in a place where it would have been noticed. Sergeant Robert Lawlor of the New Haven police department and investigator Esposito of the fire department both testified that the gallon container of gasoline could only have been placed in the store by someone with a key. Separate keys were required to unlock the padlock on the gate and the locks on the front door, and to deactivate the alarm system. The only two sets of keys were in the possession of the defendant and Lopez. Lopez and the defendant had a friendly relationship and Lopez had no reason to attempt to damage the store.

The building at 113 Putnam Street was owned by Mario LaPrieta. LaPrieta and his wife Soccorsa lived in an apartment over the store and were asleep in a bedroom directly above the store the morning of the firebombing. The LaPrietas had no keys to the store and had no access to the store once it was closed for the evening.

The defendant had originally taken over the operation of the store at 113 Putnam Street from a previous tenant of LaPrieta's without LaPrieta's consent. There was evidence that the landlord-tenant relationship between LaPrieta and the defendant was acrimonious from the beginning and that in September, 1981, LaPrieta had commenced summary process proceedings to evict the defendant. The trial of that matter was scheduled for March 22, 1982, the day after the fire. Although there was evidence that the defendant had a defense which would delay his eviction, it was obvious that the relationship of the parties had broken down and any respite would be only temporary. The evidence further indicated that the defendant desired a grocery store beer permit for the other store he owned at 142 Putnam Street, but the lease for 113 Putnam Street contained a provision that the permit for that address could not be transferred. Local zoning regulations also presented a serious obstacle to obtaining a grocery store beer permit for 142 Putnam Street as long as one existed for 113 Putnam Street. The contents of the Agron Superette were insured against fire for $40,000 and the defendant's insurance agent testified that the defendant had attempted to increase that amount to $45,000 a few months before the firebombing. There was testimony that before the fire the defendant was in contact with an hispanic male with a large "afro" hairstyle. That evidence was not particularly significant, however, because the person was never located or identified.

It is obvious that there was no direct evidence of the defendant's involvement in the crime and the defendant claims that the jury could not have concluded from the evidence and the reasonable inferences to be drawn from it, that his guilt had been established beyond a reasonable doubt. This court has repeatedly stated that " 'there is no legal distinction between direct and cir-

cumstantial evidence so far as probative force is concerned.' *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). 'It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence.' *State* v. *Perez,* supra, 227 . . . ." *State* v. *Braxton,* supra, 691. We cannot retry the case. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). Nor can this court "sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984), reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984).

After a scrupulous review of the record we cannot say that the jury could not reasonably have concluded that the cumulative effect of the evidence was sufficient to establish beyond a reasonable doubt that the defendant, with the requisite intent to commit arson in the first degree, had placed or procured the placement of the open container of gasoline in the Agron Superette in order to intentionally aid another unknown person to commit that crime. See *State* v. *Harrison,* 178 Conn. 689, 694, 425 A.2d 111 (1979).

II

In view of our holding that there was sufficient evidence for the jury to convict the defendant of arson in the first degree under General Statutes §§ 53a-111 and 53a-8, the defendant's second claim, that the trial court erred by instructing the jury that it could find criminal liability under § 53a-8 because there was insufficient evidence to support such an instruction, is without merit.

## III

The defendant next claims that the trial court erred in failing to inquire into defense counsel's allegedly conflicting representation of the defendant and his wife, Elizabeth Rodriquez, who was called as a defense witness. That error, the defendant argues, deprived him of his rights under the sixth amendment to the United States constitution. It appears from the record that defense counsel, Attorney Earl Williams, represented both the defendant and, at least nominally, his wife in connection with other legal matters concerning the defendant's business enterprises.

" 'Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.' *Wood* v. *Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)." *State* v. *Tyler-Barcomb,* 197 Conn. 666, 669, 500 A.2d 1324 (1985); *Festo* v. *Luckart,* 191 Conn. 622, 626–27, 469 A.2d 1181 (1983).

The defendant first argues that defense counsel's interest in having Elizabeth Rodriquez comply with a subpoena for the business records of the Agron Superette to avoid threatened contempt proceedings constituted a possible conflict of interest. He also argues that the fact that the state, apparently with the consent or, at least, the acquiescence of defense counsel, conducted an interview of Elizabeth Rodriquez before she testified as a defense witness created a possible conflict of interest. He claims that both possibilities of conflict "ripened into an actuality" when the state introduced the business records into evidence and used statements gained in the interview of Elizabeth Rodriquez to impeach her direct testimony. The defendant argues "[t]herefore the trial court had a duty to

inquire into the circumstances to determine whether the existing conflict of interest adversely affected counsel's performance."

The court must explore the possibility of a conflict of interest when it knows or reasonably should know of a conflict. *Festo* v. *Luckart,* supra, 629. The mere fact that the trial court required Elizabeth Rodriquez to comply with a valid subpoena to produce her business records did not create a conflict of interest. Absent some indication that the business records adversely impacted on the defendant or created a conflict, the trial court was not required to explore that possibility. Of the meager business records obtained from Elizabeth Rodriquez, it is not clear from the trial record or the defendant's brief what, if anything, was actually introduced into evidence at the trial or what relevance it had. It appears that the only document relating to the Agron Superette which she produced in response to the subpoena was a copy of a schedule C from a 1980 federal income tax return. Louis Vitale, the Rodriquez' business adviser, however, in response to a subpoena, produced copies of their complete federal income tax returns for the years 1980, 1981 and 1982. In fact, defense counsel read to the jury from those returns, presumably to indicate that the Rodriquez' had substantial income and the defendant did not have to resort to arson. The record simply does not reveal that any business record obtained from Elizabeth Rodriquez created a conflict of interest or indicated any circumstance requiring the trial court to inquire into that possibility.

The defendant's second argument is difficult to understand and his brief is not enlightening as to how the interview of Elizabeth Rodriquez by the state constituted a conflict of interest. Hindsight might dictate a different strategy or advice but there is nothing in

the record to indicate that the interview resulted from or created a conflict or that the trial court should reasonably have known of or anticipated a conflict.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler* v. *Sullivan,* 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). The defendant has failed to demonstrate, and the record does not reveal, an actual conflict of interest or that defense counsel's performance was adversely affected by either circumstance of which he complains.

## IV

The defendant's final claim is that he was denied the effective assistance of counsel. He acknowledges that such a claim ordinarily is more properly pursued by a petition for a new trial or a petition for a writ of habeas corpus. He claims, however, that the appellate record in this case supports a finding of ineffective assistance of counsel. We disagree.

An ineffective assistance of counsel claim requires the defendant to show "that trial counsel's performance was not reasonably competent or within the range of ordinary training and skill in the criminal law, and that trial counsel's lack of competence contributed to the defendant's conviction." *State* v. *Rivera,* 196 Conn. 567, 570, 494 A.2d 570 (1985). On the appellate record before us we cannot determine that the defendant has met either requirement. We therefore cannot conclude that he was denied effective assistance of counsel.

Further, ineffective assistance claims, even those arguably supported by the record, should be resolved in the trial court where the attorney whose conduct

is in question has an opportunity to testify. *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480 (1986).

There is no error.

In this opinion the other justices concurred.