STATE OF CONNECTICUT *v.* ROY A. KING
(13727)

SHEA, CALLAHAN, GLASS, HULL and BORDEN, Js.

Argued September 28—decision released December 11, 1990

*David J. Burke,* special public defender, with whom were *Pamela K. Elkow* and, on the brief, *Peter A. Stroili,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Roy Anthony King, was charged in a substitute information with the crimes of assault in the first degree in violation of General Statutes § 53a-59 (a) (3),[1] arson in the first degree in violation of General Statutes § 53a-111 (a) (2),[2] and attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a).[3] He was found guilty by a

---

[1] General Statutes § 53a-59 (a) (3) provides in pertinent part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[2] General Statutes § 53a-111 (a) (2) provides: "ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and . . . (2) any other person is injured, either directly or indirectly."

[3] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the

jury of all three counts of the substitute information and was sentenced by the trial court to consecutive terms of imprisonment totaling forty years.[4]

circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

General Statutes § 53a-54a (a) provides in pertinent part: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[4] The defendant was sentenced to ten years for assault, ten years for arson and twenty years for attempted murder, the sentences to run consecutively for a total sentence of forty years imprisonment.

The jury reasonably could have found the following facts. The charges against the defendant arose out of an incident that occurred in the C cell block at the Bridgeport Community Correctional Center in the early morning hours of June 20, 1988. At about 3:10 a.m. on that date, correctional officers found cell eleven in C block ablaze and its occupant Keith Commerford on fire. The door to Commerford's cell was tied shut with a bed sheet so that Commerford was unable to exit. As a result of the fire and his inability to escape, Commerford sustained first and third degree burns over 60 percent of his body. The defendant occupied cell thirteen in the same cell block in which Commerford was housed.

A search of Commerford's cell after the fire disclosed a wad of toilet paper, a partially burned matchbook and burned newspapers and clothing amongst the debris. A liquid, nonpetroleum based accelerant was used to start and fuel the fire. The defendant was familiar with the flammable potential of an aerosol spray disinfectant that was available to the inmates for cleaning purposes.[5] This particular disinfectant had an alcohol base and, if sprayed into a container, became a liquid that, if ignited, would burn with a blue flame. The flames in Commerford's cell were described as blue in color by the witnesses to the fire.

Just prior to the fire, the defendant was involved in a dispute with Commerford because he believed that Commerford had "snitched" to Carl Zelinsky, another inmate, that the defendant had stolen a handmade greeting card that was Zelinsky's property.[6] Zelinsky and Commerford confronted the defendant in his cell about the card. Thereafter, the defendant called Com-

---

[5] Another inmate had previously seen King ignite the spray from the aerosol can and use the disinfectant as a "flame thrower."

[6] Zelinsky, who apparently possessed some artistic talent, made greeting cards, which he sold to the other inmates for pocket money.

merford a "snitch," told him to "watch his back," and threatened to "get" him. Subsequently, the defendant told another inmate, Carl Barnes, that "he was going to burn up the [Commerford's] cell that night . . . with toilet paper or something."

Although the entrance to C block was locked, the individual cells were not locked and the inmates were free to use the bathroom at the end of the cell block corridor during the night. Other inmates of C block had, in fact, seen the defendant outside of his cell, in the common corridor, in the vicinity of the victim's cell prior to the time that they heard screams and saw fire emanating from cell eleven. Commerford, himself, testified that he saw King outside his cell when he was awakened by the fire.

The defendant claims on appeal that the trial court should not have: (1) admitted evidence that the defendant was involved in a fight with a witness in the courthouse during a lunch break on the last day of the trial or instructed the jury as it did regarding evidence of the fight; (2) denied his motion to dismiss or elect counts, and his motion for a new trial, or instructed the jury as it did regarding assault in the first degree and attempted murder, all of which resulted in an inconsistent jury verdict and the denial of his right to a fair trial; (3) denied his request during the cross-examination of state police officer John J. Buturla for a copy of Buturla's report concerning his interviews with inmates of the Fairmont cell block of the Bridgeport Correctional Center; (4) denied his motion for acquittal that was based on the claimed failure of the state to present sufficient evidence to convict; or (5) allowed the victim to exhibit his injuries to the jury.

We agree with the defendant that a new trial is necessary on the assault and attempted murder charges because the verdicts that the jury returned on those

two counts are inconsistent. We also conclude that a remand is necessary in order to determine the validity of the defendant's third claim. We find the defendant's other claims unpersuasive.

I

The defendant first claims that the trial court incorrectly admitted evidence on rebuttal that, during the trial, the defendant had been involved in a fight with a prosecution witness in the detention area of the Bridgeport Superior Court. He also claims that the trial court improperly instructed the jury regarding this rebuttal evidence.

A deputy sheriff, who supervised the detention area at the courthouse, testified on rebuttal that on the last day of the trial, after Pedro Nunez, a correctional center inmate, had testified for the state, the defendant and another inmate had fought with Nunez in a detention cell during the luncheon recess. The avowed purpose for which the evidence was offered by the state was to demonstrate a consciousness of guilt on the part of the defendant. The defendant did not object to the admission of the testimony concerning the fight at the time of trial or question its purpose at the time it was admitted.

An objection must be made and an exception taken in order to raise an evidentiary claim as a ground for error on appeal. Practice Book § 288; *Ferreira* v. *Storms,* 159 Conn. 259, 264, 268 A.2d 657 (1970); *Skinner* v. *Skinner,* 154 Conn. 107, 110, 221 A.2d 848 (1966). Because the defendant failed to object to what is clearly a question of the admissibility of the state's evidence, we decline to consider his evidentiary claim. To rule otherwise would amount to trial by "ambuscade" of the trial judge. *State* v. *Siemon,* 172 Conn. 19, 20, 372 A.2d 140 (1976); *State* v. *DeGennaro,* 147

Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960).

The defendant also contends that, even absent an objection to the admission of the evidence of the fight, we should consider his claim as "plain error" under Practice Book § 4185.[7] That section provides that this court "may in the interests of justice notice plain error not brought to the attention of the trial court." However, "[s]uch review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *State* v. *Miller,* 202 Conn. 463, 483, 522 A.2d 249 (1987). This is simply not one of those situations. There is no plain error.[8]

The defendant also contends that the trial court improperly commented on the fight in its instructions to the jury. Principally, he claims that the trial court preempted the function of the jury by telling the jurors that there was evidence in the case that the defendant

---

[7] "[Practice Book] Sec. 4185. (Formerly Sec. 3063). ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

[8] The defendant does not claim that this is a constitutional issue reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), as indeed it is not.

and another prisoner "attacked" Nunez when there was no evidence in the record to support such a comment. The sheriff had, in fact, testified that he saw the defendant and another inmate "attacking Nunez." Since that testimony was admitted without objection, the jury could give it such weight as it saw fit; *State v. Rawls,* 198 Conn. 111, 118, 502 A.2d 374 (1985); and the trial court was free to comment on it as long as the court did so fairly and did "not direct or advise the jury how to decide the matter. *State v. Mullings,* 166 Conn. 268, 274, 348 A.2d 645 (1974)." *State v. Storlazzi,* 191 Conn. 453, 465–66, 464 A.2d 829 (1983); see also *State v. Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985).

In its charge the trial court emphasized to the jury that it was within the jury's province to decide the facts and that it was for the jurors to find whether in fact the fight had occurred, and to determine what weight, if any, to give it. The instruction did not direct or advise the jury how to decide the issue and fairly presented it to the jury in such a way that no injustice was done to the defendant. *State v. Storlazzi,* supra, 467. We find no merit to this claim.

## II

The defendant next claims that he is entitled to a new trial because the trial court should not have instructed the jury that it could find him guilty of both attempted murder and assault in the first degree in violation of § 53a-59 (a) (3). He argues that the guilty verdicts thereafter returned on those two counts were legally and logically inconsistent and deprived him of due process of law.[9] We agree that the defendant is entitled to a new trial on those two counts of the substitute information.

---

[9] This claim was raised sufficiently at trial to alert the court to the problem of inconsistent verdicts and was consequently preserved for appeal.

The jury's verdict of guilty on the count of attempted murder required that the jury find that the defendant acted with the intent[10] to cause the death of the victim. General Statutes §§ 53a-49 (a) (2) and 53a-54a (a). On the other hand, the jury's verdict of guilty on the count of assault necessitated a finding that the defendant acted *recklessly,*[11] and thereby created a risk of death to the victim. General Statutes § 53a-59 (a) (3). The intent to cause death required for a conviction of attempted murder, by definition, therefore, necessitated a finding that the defendant acted with the conscious objective to cause death. The reckless conduct necessary to be found for a conviction of assault under the subsection charged, however, required a finding that the defendant acted without such a conscious objective. *State* v. *Beccia,* 199 Conn. 1, 4, 505 A.2d 683 (1986). To return verdicts of guilty for both attempted murder and assault in the first degree, therefore, the jury would have had to find that the defendant simultaneously acted intentionally and recklessly with regard to the same act and the same result, i.e., the injury to the victim. *People* v. *Spears,* 112 Ill. 2d 396, 403–404, 493 N.E.2d 1030 (1986); *People* v. *O'Neil,* 194 Ill. App. 3d 79, 550 N.E.2d 1090, 1098, appeal denied,      Ill. 2d    , 553 N.E.2d 400 (1990).

As is evident, however, the statutory definitions of "intentionally" and "recklessly" are mutually exclu-

---

[10] General Statutes § 53a-3 (11) defines "intentionally" as follows: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

[11] General Statutes § 53a-3 (13) defines "recklessly" as follows: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

sive and inconsistent. "Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result." *State* v. *Beccia*, supra, 4. Therefore, the transgression that caused the victim's injuries was either intentional or reckless; it could not, at one and the same time, be both. Id.; *People* v. *Lucas*, 132 Ill. 2d 399, 442, 548 N.E.2d 1003 (1989); *People* v. *Gallagher*, 69 N.Y.2d 525, 529, 508 N.E.2d 909, 516 N.Y.S.2d 174 (1987); *People* v. *Robinson*, 145 App. Div. 2d 184, 186, 538 N.Y.S.2d 122 (1989), aff'd, 75 N.Y.2d 879, 553 N.E.2d 1021, 554 N.Y.S.2d 473 (1990). Where a determination is made that one mental state exists, to be legally consistent the other must be found not to exist. *People* v. *Spears*, supra; *People* v. *Hoffer*, 106 Ill. 2d 186, 195, 478 N.E.2d 335, cert. denied, 474 U.S. 847, 106 S. Ct. 139, 88 L. Ed. 2d 114 (1985). "By no rational theory could the jury have found the defendant guilty of both crimes." *People* v. *Gallagher*, supra, 530; *People* v. *O'Toole*, 138 App. Div. 2d 639, 640, 526 N.Y.S.2d 223 (1988). Logically then, the jury verdicts convicting the defendant of two offenses each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand. *Fuller* v. *United States*, 407 F.2d 1199, 1223 (D.C. Cir. 1967), cert. denied, 393 U.S. 1120, 89 S. Ct. 999, 22 L. Ed. 2d 125 (1969); *Thomas* v. *United States*, 314 F.2d 936, 939 (5th Cir.), cert. denied, 375 U.S. 849, 84 S. Ct. 105, 11 L. Ed. 2d 76 (1963); *People* v. *Carter*, 193 Ill. App. 3d 529, 550 N.E.2d 25, 28 (1990); annot., 18 A.L.R.3d 259, 283.

Furthermore, at this point, we have no way of knowing whether a properly instructed jury would have found the defendant guilty of attempted murder or assault in the first degree. Setting aside one of the convictions, therefore, will not cure the failure of the trial court to instruct the jury properly. *Milanovich* v. *United*

*States,* 365 U.S. 551, 555, 81 S. Ct. 728, 5 L. Ed. 2d 773 (1961); *People* v. *Spears,* supra, 407; *People* v. *Gallagher,* supra, 531; *People* v. *Robinson,* supra, 186. Moreover, it is not for this court, on appeal, to make a factual determination as to the defendant's mental state at the time the alleged crime was committed. *State* v. *Pollitt,* 199 Conn. 399, 415, 508 A.2d 1 (1986); *People* v. *Gallagher,* supra, 530. The inconsistent verdicts, therefore, require that we vacate the defendant's convictions of attempted murder and assault in the first degree and remand only those two counts for a new trial.[12] *United States* v. *Duz-Mor Diagnostic Laboratory, Inc.,* 650 F.2d 223, 226 n.3 (9th Cir. 1981); *People* v. *Hoffer,* supra, 195; *People* v. *O'Neil,* supra, 1101; *People* v. *Coleman,* 131 Ill. App. 3d 76, 80, 475 N.E.2d 565 (1985). Upon a retrial, *if the evidence permits,* the trial court may properly submit both counts to the jury *but only in the alternative.* Further, the trial court *must* instruct the jury that, depending on its findings of fact, it may convict the defendant of one count or the other, but not of both. *People* v. *Spears,* supra, 410; *People* v. *O'Neil,* supra, 1098; *People* v. *Gallagher,* supra, 530.

## III

The defendant next claims that the trial court should not have denied his request, made during the cross-examination of state police officer John J. Buturla, for access to a copy of Buturla's report concerning interviews that he conducted with inmates housed in the

---

[12] Our conclusion does not require that we overturn the jury's guilty verdict as to the count of arson in the first degree in violation of General Statutes § 53a-111 (a) (2). A reversal of the verdict as to that count is not mandated because the jury could logically have found that the defendant started a fire with the intent to destroy or damage a building as required by the statute and a person was injured, regardless of whether the defendant acted intentionally or recklessly with respect to the victim. See *State* v. *Flynn,* 14 Conn. App. 10, 27, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

Fairmont cell block at the Bridgeport Community Correctional Center. The subject of the Fairmont interviews apparently arose because the victim had previously been an inmate of the Fairmont unit and had been transferred from that unit to the C cell block only shortly before the fire on June 20.[13] Buturla, in response to the defendant's question, stated that he had interviewed Fairmont inmates who had had contact with Commerford. He further stated that he "believed" that he had made out a report concerning those interviews but that he did not "believe" he had that report with him. The basis of the defendant's claim for procurement of Buturla's report was the defendant's representation that the report was germane to Buturla's direct examination, that it was Buturla's "statement" under Practice Book § 749,[14] and that he was entitled to that "statement" by virtue of Practice Book §§ 752 and 753.[15] The state objected to the

_____

[13] The defendant claimed that the report would show animosity and a desire to "get" Commerford by other inmates of the correctional center housed in the Fairmont unit.

[14] "[Practice Book] Sec. 749. ——DEFINITION OF STATEMENT

"The term 'statement' as used in Sec. 748 means:

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[15] "[Practice Book] Sec. 752. —— ——PRODUCTION FOLLOWING TESTIMONY

"After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

"[Practice Book] Sec. 753. —— ——DELIVERY AND EXCISION OF STATEMENTS

"If the entire contents of a statement requested under Sec. 752 relate to the subject matter of the testimony of the witness, the judicial authority shall order the statement to be delivered directly to the defendant or his counsel for his examination and use. If the prosecuting authority claims

defendant's request only on the ground that the report
of Buturla's interviews with the Fairmont inmates was
irrelevant. The trial court, without ordering the produc-
tion of Buturla's report, and consequently, without con-
ducting an in camera inspection thereof, or sealing it
for inclusion in the record, denied the defendant's
request for the report on the ground that the subject
of the report was not within the scope of the state's
direct examination.[16]

This court is placed in a particularly difficult posi-
tion because of the procedural posture of this claim.
Although at trial the state objected to the defendant's
request for Buturla's report only on the ground of
relevancy, in its brief on appeal it also appears to argue

that any statement ordered to be produced under Sec. 751 contains mat-
ter which does not relate to the subject matter of the testimony of the wit-
ness, the judicial authority shall order the prosecuting authority to deliver
such statement for the inspection of the judicial authority in camera. Upon
such delivery, the judicial authority shall not disclose that portion of such
statement which does not relate to the subject matter of the testimony of
the witness. With such material excised or obliterated, the judicial author-
ity shall then direct delivery of such statement to the defendant or his counsel
for his use. If, pursuant to this procedure, any portion of such statement
is withheld from the defendant or his counsel and the defendant objects
to such withholding, and the trial is continued to an adjudication of the guilt
of the defendant, the entire text of such statement shall be sealed and pre-
served as an exhibit in the case, and, in the event that the defendant appeals,
it shall be made available to the appellate court and, unless for good cause
the trial court orders otherwise, to counsel for the parties for the purpose
of determining the correctness of the ruling of the judicial authority."

[16] The defendant also claims on appeal that the refusal of the trial court
to allow him the use of Buturla's report "may" have deprived him of "pos-
sible" *Brady* material. See *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194,
10 L. Ed. 2d 215 (1963). At trial the defendant did not make this claim
but relied rather on Practice Book §§ 752 and 753 to compel production.
The defendant's present claim is pure speculation on his part and is insuffi-
cient to establish a showing of materiality in the constitutional sense. *State*
v. *Shannon,* 212 Conn. 387, 402, 563 A.2d 646, cert. denied, 493 U.S. 980,
110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Mak,* 105 Wash. 2d 692,
704–705, 718 P.2d 407, cert. denied, 479 U.S. 995, 107 S. Ct. 599, 93 L.
Ed. 2d 599 (1986).

that the report is not a "statement" under Practice Book § 749. Without the report in the record, however, we are unable to answer any questions concerning it. Because the state did not claim at trial that the report was not a "statement," and the court did not rely on § 749 for its ruling denying the defendant access to the report, we can only assume that, but for its alleged irrelevancy and inapplicability to the direct examination, the report would have been ordered produced for the defendant's use. *State* v. *Gonzales,* 186 Conn. 426, 434, 441 A.2d 852 (1982). This situation appears to be analogous to the *Gonzales* case cited above. In that case the trial court also denied the defendant access to a statement requested under Practice Book §§ 752 and 753. Furthermore, as here, the trial court did not conduct an in camera inspection of the requested document nor did it order the alleged statement sealed as an exhibit. Id., 431. In *Gonzales,* we concluded that the very purpose of an in camera inspection is to permit the trial court to exercise its judgment as to "whether a portion of the disputed statement may be suppressed because it 'does not relate to the subject matter of the testimony of the witness.' " Id., 435. Further, we held that "[t]he provision for in camera inspection is, by the express terms of § 753, mandatory." Id.; *State* v. *Anonymous,* 190 Conn. 715, 732, 463 A.2d 533 (1983).

Until Buturla's report is produced and is inspected in camera by the trial court, it is impossible to determine whether his report constitutes a statement under Practice Book § 749 or whether it relates to the subject matter of Buturla's testimony on direct examination. Furthermore, whether the defendant was prejudiced by not having access to Buturla's report cannot be ascertained by speculation about what the report contains. Nor may we speculate as to whether the jury would have convicted the defendant had

Buturla's testimony been stricken if the state had refused to produce his report in response to a court order. In other words, we cannot say on the basis of the present, almost nonexistent, record that this is a case of harmless error. *State* v. *D'Ambrosio,* 212 Conn. 50, 61–62, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); *State* v. *Whitaker,* 202 Conn. 259, 272, 520 A.2d 1018 (1987); *State* v. *Gonzales,* supra, 435.

The trial court's failure to order the production of Buturla's report and to inspect that report in camera does not, however, at this point, necessitate setting aside the defendant's conviction of arson in the first degree that has thus far survived appeal. On the assumption that Buturla's report exists and is still available,[17] this case must be remanded to the judge who presided at the defendant's trial so that he can determine upon an in camera inspection whether Buturla's report is a statement under § 749 and, if so, whether all or any portion of it should have been made available to the defendant under §§ 752 and 753. *State* v. *Gonzales,* supra, 435–36.

On remand, the trial judge must resolve three questions and report their resolution to this court. *State* v. *Pollitt,* supra, 417; *State* v. *Lafferty,* 191 Conn. 73, 77, 463 A.2d 238 (1983). He must first determine whether the report is a "statement" under § 749. If so, he must then determine whether all or any portion of the statement contains material that should have been disclosed. If it does, he must then determine whether the nondisclosure was harmful to the defendant because the defense was prejudiced by its inability to gain access to the undisclosed material. *State* v. *Gonzales,* supra, 436. If all three questions are answered in the affirmative, a new trial must be ordered as to the remaining

---

[17] The state has never claimed otherwise.

conviction of arson in the first degree. If any of the questions are answered in the negative, a new trial on that charge is not necessary. Buturla's report, however, must be sealed and preserved as an exhibit to enable the defendant, if he so desires, to seek further review.[18] Id.; see *Goldberg* v. *United States,* 425 U.S. 94, 111–12, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976); see also *United States* v. *Peters,* 625 F.2d 366, 371 (10th Cir. 1980).

## IV

The defendant next claims that the evidence adduced at his trial was insufficient to sustain his convictions and that the trial court should have granted his motion for acquittal. " 'When a claim on appeal challenges the sufficiency of the evidence, we undertake a two-part task. "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984)." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); see *State* v. *McCarthy,* 197 Conn. 166, 178, 496 A.2d 190 (1985).' *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986).

---

[18] On a retrial of the attempted murder and assault in the first degree charges, if this issue arises again, the trial court should order the production of Buturla's report and determine whether it is a statement under Practice Book § 749. If it is, the trial court should then conduct an in camera inspection to ascertain whether the material in the report is subject to disclosure under Practice Book §§ 752 and 753.

"Although the jury may 'draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture.' *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). Each essential element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The relevant question in our review ' " 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U.S. [356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)].' (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." *State* v. *Morrill,* 197 Conn. 507, 512, 498 A.2d 76 (1985).' *State* v. *Brown,* 199 Conn. 14, 23, 505 A.2d 690 (1986). 'In reviewing the sufficiency of the evidence supporting a jury verdict, this court must construe that evidence in the most favorable manner reasonably possible to support the jury verdict. *Josephson* v. *Meyers,* 180 Conn. 302, 313, 429 A.2d 877 (1980); *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *State* v. *Rossier,* 175 Conn. 204, 207, 397 A.2d 110 (1978).' *State* v. *Martin,* 189 Conn. 1, 8, 454 A.2d 256 [cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306] (1983)." *State* v. *Rodriquez,* 200 Conn. 685, 687–88, 513 A.2d 71 (1986).

The defendant maintains that the evidence against him was circumstantial and that much of the testimony on which the verdict was based was inconsistent and conflicting. He contends that, consequently, the jury's verdicts were necessarily based upon speculation and conjecture, rather than upon reasonable inferences

drawn from proven facts, and that his motion for acquittal should have been granted. We disagree.

"This court has repeatedly stated that ' "there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." *State* v. *Perez,* supra, 227 . . . .' *State* v. *Braxton,* supra, 691. We cannot retry the case. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). Nor can this court 'sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility.' *State* v. *Stepney,* [supra, 255]." *State* v. *Rodriquez,* supra, 692–93.

After a review of the record we conclude that the jury could reasonably have determined that the cumulative effect of the evidence was sufficient to establish beyond a reasonable doubt that the defendant committed the crimes of arson in the first degree and either assault in the first degree under § 53a-59 (a) (3) or attempted murder under §§ 53a-49 and 53a-54a.

## V

Finally, the defendant claims that the trial court should not have permitted the victim to exhibit his injuries to the jury. He argues that the seriousness of the victim's injuries was demonstrated by medical testimony and that any probative value of a viewing by the jury was outweighed by its prejudicial effect. At trial, the court disagreed with this argument and made an

explicit finding that the probative value of a jury view of the victim's injuries outweighed any prejudice that it might engender. We agree with the trial court.

The extent of the victim's injuries was relevant to the state's case for at least two reasons: to prove the necessary element of serious physical injury under the assault count, and to demonstrate that the defendant had taken substantial steps to cause the victim's death under the attempted murder count. Evidence is admissible if it has " 'a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. Note, 73 A.L.R.2d 769, 787.' *State* v. *DeJesus*, [194 Conn. 376, 381, 481 A.2d 1068 (1984)]." *State* v. *Doehrer*, 200 Conn. 642, 649, 513 A.2d 58 (1986). There is no requirement that potentially inflammatory evidence be absolutely essential to the state's case and otherwise unobtainable in order that it be admissible; rather, " 'the test for determining the admissibility of challenged evidence is relevancy and not necessity. *State* v. *Piskorski*, 177 Conn. 677, 701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).' *State* v. *Haskins*, 188 Conn. 432, 453, 450 A.2d 828 (1982) [cert. denied, 479 U.S. 1084, 107 S. Ct. 1285, 94 L. Ed. 2d 143 (1987)]." *State* v. *Doehrer*, supra, 649. The trial court has broad discretion in cases where relevant evidence is challenged as inflammatory and prejudicial, and its determination that the probative value of the evidence outweighs its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. *State* v. *Haskins*, supra; *State* v. *Piskorski*, supra, 701–702. Such an abuse of discretion has not been demonstrated in this instance.

The judgment is reversed in part, the convictions of assault in the first degree and attempted murder are vacated, and a new trial is ordered as to those counts

only; the count of arson in the first degree is remanded to the trial court for further proceedings consistent with Part III of this opinion.

In this opinion the other justices concurred.